UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:

| | |
|---|---|
| UNITED STATES,<br><br>             Plaintiff,<br><br>             v.<br><br>KOEHLER OBERKIRCH GMBH, f/k/a PAPIERFABRIK AUGUST KOEHLER SE, f/k/a PAPIERFABRIK AUGUST KOEHLER AG; and KOEHLER PAPER SE,<br><br>             Defendants. | **JURY TRIAL DEMANDED**<br><br>Court No. 24-00014<br><br>NON-CONFIDENTIAL |

## AMENDED COMPLAINT

Plaintiff, the United States of America, through its undersigned attorneys, alleges as follows:

1. This action is brought against Koehler Oberkirch GmbH and its successor-in-interest, Koehler Paper SE, to recover unpaid antidumping duties and pre-liquidation interest in the amount of $193,631,642.08 owed on 1,462 entries of lightweight thermal paper, plus additional pre- and post-judgment interest, including but not limited to interest pursuant to 19 U.S.C. § 1505(d).

2. This court has jurisdiction under 28 U.S.C. § 1582(3).

**Koehler Oberkirch GmbH**

3. Defendant Koehler Oberkirch GmbH is currently located at Hauptstraße 2, 77704 Oberkirch, Baden-Württemberg, Federal Republic of Germany.

4. Koehler Oberkirch GmbH is formerly known as Papierfabrik August Koehler SE.

5.  In November 2021, Papierfabrik August Koehler SE became Koehler Oberkirch GmbH through "a statutory conversion, i.e., the actual business entity continues to be the same." Koehler Paper, *Name-change: "Papierfabrik August Koehler SE" is now "Koehler Oberkirch GmbH"* (Dec. 20, 2021), https://www.koehlerpaper.com/en/news/publications/name-change_PAK-SE.php.

6.  Papierfabrik August Koehler SE was formerly known as Papierfabrik August Koehler AG.

7.  In 2012, Papierfabrik August Koehler AG became known as Papierfabrik August Koehler SE by converting to a different corporate form.

8.  Koehler Oberkirch GmbH is the mere continuation of, or successor-in-interest to, Papierfabrik August Koehler SE, which itself was the mere continuation of, or successor-in-interest to, Papierfabrik August Koehler AG.

**Antidumping Duties Owed On Koehler's Entries**

9.  Between November 1, 2009, and October 31, 2011, Koehler Oberkirch GmbH ("Koehler"), formerly known as Papierfabrik August Koehler SE, formerly known as Papierfabrik August Koehler AG, imported lightweight thermal paper from Germany through the 1,462 entries listed in Exhibit A (the "Entries").

10. The imported lightweight thermal paper in the Entries was subject to antidumping duties pursuant to *Antidumping Duty Orders: Lightweight Thermal Paper from Germany and the People's Republic of China*, 73 Fed. Reg. 70,959 (Dep't Commerce Nov. 24, 2008).

11. At the time of entry, Koehler made estimated antidumping duty cash deposits on the Entries at rates of either 3.77 percent *ad valorem* or 6.50 percent *ad valorem*.

12. The United States Department of Commerce ("Commerce") conducted administrative reviews of the antidumping duty order for the periods of review of November 1, 2009 through October 31, 2010, and November 1, 2010 through October 31, 2011.

13. During the administrative review for the period of November 1, 2010 through October 31, 2011, Commerce observed that Koehler engaged in a transshipment scheme in which Koehler intentionally concealed reportable home market sales transactions, both during the period of review for November 1, 2010 through October 31, 2011, and during the prior period of review from November 1, 2009 through October 31, 2010. *Lightweight Thermal Paper from Germany: Final Results of Antidumping Duty Administrative Review; 2010-2011*, 78 Fed. Reg. 23,220 (Dep't Commerce Apr. 18, 2013); *Issues & Decision Mem. For the Final Results of the 2010-2011 Admin. Review on Lightweight Thermal Paper from Germany*, A-428-840, ARP 10-11 (Apr. 10, 2013), https://access.trade.gov/Resources/frn/summary/germany/2013-09049-1.pdf.

14. Koehler publicly acknowledged that the allegations that it engaged in such a transshipment scheme were substantially correct. *Lightweight Thermal Paper from Germany: Final Results of Antidumping Duty Administrative Review; 2010-2011*, 78 Fed. Reg. 23,220 (Dep't Commerce Apr. 18, 2013); *Issues & Decision Mem. For the Final Results of the 2010-2011 Admin. Review on Lightweight Thermal Paper from Germany*, A-428-840, ARP 10-11 (Apr. 10, 2013), https://access.trade.gov/Resources/frn/summary/germany/2013-09049-1.pdf.

15. Commerce ultimately assigned a final dumping margin of 75.36 percent for the Entries made during both periods of review, November 1, 2009 through October 31, 2010, and November 1, 2010 through October 31, 2011.

**THIS PAGE CONTAINS CONFIDENTIAL INFORMATION**

16. The United States Court of International Trade upheld the 75.36 percent rate applied to Koehler's Entries.

17. The United States Court of Appeals for the Federal Circuit affirmed this Court's decisions upholding the 75.36 percent rate applied to Koehler's Entries, and the United States Supreme Court denied Koehler's petitions for writs of *certiorari*.

18. United States Customs and Border Protection ("Customs") liquidated and/or reliquidated the Entries at the 75.36 percent rate after Commerce issued notices lifting the suspension of liquidation of the Entries and liquidation instructions.

19. Koehler protested many of the Entries' liquidations and reliquidations which applied the 75.36 percent rate.

20. On [[          ]], Customs issued ruling letter [[          ]], determining that certain interest for some of Koehler's Entries was miscalculated, among other things.

21. Between July 16 and July 28, 2020, Customs granted in part and denied in part Koehler's protests based on ruling letter [[          ]].

22. Between July 31 and August 7, 2020, Customs reliquidated certain Entries as a result of its granting Koehler's protests in part.

23. As to each of the Entries, Customs issued written bills to Koehler for payment due to Customs at the time of the Entries' liquidation or reliquidation. Exhibit A lists the original date and amount of all 1,462 bills, correlating to each of the 1,462 Entries.

24. The bills seeking payment are comprised of unpaid antidumping duties in the amount of $145,288,597.04 (which reflects the difference between the antidumping duty rate of 75.36 percent *ad valorem* applied at liquidation or reliquidation and the rate asserted by Koehler and used to make estimated antidumping duty deposits at the time of entry) plus $48,343,045.04

(which reflects pre-liquidation interest that Customs assessed on the outstanding antidumping duties pursuant to 19 U.S.C. § 1677g).

25. The combined total amount of additional antidumping duties and pre-liquidation interest owed by Koehler after the liquidation or reliquidation of the Entries is $193,631,642.08.

26. Customs has notified Koehler of the unpaid amounts owed in connection with the Entries, including the continuing accrual of post-liquidation interest pursuant to 19 U.S.C. § 1505(d), on a monthly basis.

27. Koehler did not file any action in this Court contesting Customs' denials in part of its protests with regard to any of the Entries within 180 days of such denials.

28. Customs' assessment of $193,631,642.08 in antidumping duties and pre-liquidation interest pursuant to 19 U.S.C. § 1677g, as well as the applicability of post-liquidation interest pursuant to 19 U.S.C. § 1505(d), not having been timely challenged in this Court within 180 days of Customs' denial of a protest, is final and conclusive under 19 U.S.C. § 1514(a).

**The "Spin-Off" to Koehler Paper SE**

29. On April 1, 2021—less than nine months after Customs denied Koehler's protests and less than three months after 180 days had elapsed from such denials—Koehler underwent what it publicly described as a "spin-off," whereby certain assets and liabilities were transferred to a new company called Koehler Paper SE.

30. Defendant Koehler Paper SE maintains the same corporate address as Koehler at Hauptstraße 2, 77704 Oberkirch, Baden-Württemberg, Federal Republic of Germany.

31. At the time of the "spin-off," Koehler Paper SE and Koehler shared the same officers and directors.

32. Koehler was the [[ ▮▮▮ ]] of the Koehler Paper Group before the "spin-off." Koehler Paper SE, *Consolidated Financial Statements as of December 31, 2021, and Group Management Report* (dated March 2022) ("*Koehler Paper SE Financial Statement FY 2021*").

33. At the end of Koehler's 2020 fiscal year ("FY 2020") on December 31, 2020, Koehler had [[ ▮▮▮ ]] in assets. Koehler, *Annual Financial Statements as of December 31, 2020, and Management Report* (dated March 2021) ("*Koehler Financial Statement FY 2020*").

34. Koehler listed "other provisions" of approximately [[ ▮▮▮ ]] at the end of FY 2020, which Koehler claimed was [[ ▮▮▮ ]] to cover [[ ▮▮▮ ]] of the debts it owes to Customs. *Id*.

35. In the "spin-off," Koehler transferred to Koehler Paper SE approximately [[ ▮▮▮ ]] of assets—including over [[ ▮▮▮ ]] of Koehler's receivables and control over profitable manufacturing subsidiary Koehler Kehl GmbH—but only [[ ▮▮▮ ]] of "other provisions" and [[ ▮▮▮ ]] of liabilities. Koehler, *Annual Financial Statements as of December 31, 2021, and Management Report* (dated March 2022) ("*Koehler Financial Statement FY 2021*").

36. At the end of the FY 2021, Koehler's assets had been reduced to [[ ▮▮▮ ]], or less than a quarter of what they were at the close of the prior fiscal year before the "spin-off." *Id*.

37. Koehler's revenue also fell by [[ ▮ ]] percent by the end of FY 2021 mainly due to the fact that, after the "spin-off," paper manufactured by Koehler Kehl GmbH was being sold by Koehler Paper SE rather than Koehler. *Id*.

6

38. Additionally, after the "spin-off," Koehler cut its "other provisions" to [[          ]], which Koehler claimed was [[          ]] for the [[                              ]] *Id.*

39. After the "spin-off," [[                                                  ]] with Koehler [[                              ]] subsidiary of Koehler Paper SE. *Koehler Paper SE Financial Statement FY 2021*.

40. Neither Koehler nor Koehler Paper SE has listed the full $193,631,642.08 debt owed to Customs in its financial statements, whether as an "other provision," liability, or something else, despite being aware of the full amount of such debt. *Koehler Financial Statement FY 2021*; *Koehler Paper SE Financial Statement FY 2021*.

41. Koehler Paper SE's and Koehler's descriptions of the "spin-off" in their FY 2021 financial statements omit any mention of the $193,631,642.08 debt owed to Customs. *Koehler Financial Statement FY 2021*; *Koehler Paper SE Financial Statement FY 2021*.

42. As a direct result of the "spin-off," Koehler now lacks assets sufficient to pay its debts to Customs, including post-liquidation interest under 19 U.S.C. § 1505(d) and any additional pre- and post-judgment interest.

<u>**COUNT I**</u>
**(Koehler Oberkirch GmbH)**

43. The United States incorporates the allegations in paragraphs 1 through 42 as if set forth fully herein.

44. Federal common law provides "that a successor entity may be responsible for its predecessor's debts when '(1) there is an express or implied agreement to assume past debts, (2) the change in corporate form constitutes a de facto merger, (3) the successor is a mere continuation of its predecessor, or (4) the change in corporate form was motivated by the intent

to defraud creditors.'" *United States v. Sterling Footwear, Inc.*, 279 F. Supp. 3d 1113, 1140 (Ct. Int'l Trade 2017) (quoting *United States v. Ataka Am., Inc.*, 826 F. Supp. 495, 498 (Ct. Int'l Trade 1993)).

45. Koehler Oberkirch GmbH, as the mere continuation of, or successor-in-interest to, the importer of record that made the Entries, is liable to Customs for all unpaid amounts, including accrued interest, owed in connection with the Entries.

46. To date, Koehler Oberkirch GmbH has not made any payments to Customs with respect to the unpaid amounts, including accrued interest, owed in connection with the Entries.

47. Koehler Oberkirch GmbH is accordingly liable for $193,631,642.08 in antidumping duties and interest pursuant to 19 U.S.C. § 1677g owed in connection with the Entries, plus additional pre- and post-judgment interest, including but not limited to interest pursuant to 19 U.S.C. § 1505(d).

**COUNT II**
**(Koehler Paper SE)**

48. The United States incorporates the allegations in paragraphs 1 through 47 as if set forth fully herein.

49. Federal common law provides "that a successor entity may be responsible for its predecessor's debts when '(1) there is an express or implied agreement to assume past debts, (2) the change in corporate form constitutes a de facto merger, (3) the successor is a mere continuation of its predecessor, or (4) the change in corporate form was motivated by the intent to defraud creditors.'" *Sterling Footwear, Inc.*, 279 F. Supp. 3d at 1140 (quoting *Ataka Am., Inc.*, 826 F. Supp. at 498).

50. The "spin-off," including the creation of Koehler Paper SE and transfer of Koehler's significant assets thereto, was motivated by the intent to defraud Customs. In

8

particular, the defendants (1) concealed the full amount of Koehler's debts to Customs from their financial statements; (2) shared the same officers and directors at the time of the "spin-off"; (3) conducted the "spin-off" a few months after Koehler's debts to Customs became final and conclusive by law; (4) transferred over three-quarters of Koehler's assets to Koehler Paper SE without an equivalent transfer of liabilities or provisions; and (5) left Koehler with insufficient assets to pay its debts to Customs.

51. Because the "spin-off" was motivated by the intent to defraud Customs, Koehler Paper SE is liable for Koehler's debts to Customs as Koehler's successor-in-interest.

52. To date, Koehler Paper SE has not made any payments with respect to the unpaid amounts, including accrued interest, owed in connection with the Entries.

53. Koehler Paper SE is accordingly liable to Customs, to the same extent as Koehler, for $193,631,642.08 in antidumping duties and interest pursuant to 19 U.S.C. § 1677g owed in connection with the Entries, plus additional pre- and post-judgment interest, including but not limited to interest pursuant to 19 U.S.C. § 1505(d).

WHEREFORE, the United States respectfully requests that this Court grant judgment in its favor and against defendants in the amount of $193,631,642.08, plus pre-judgment interest, including but not limited to interest pursuant to 19 U.S.C. § 1505(d), and post-judgment interest; and grant the United States such other and further relief as may be just and appropriate.

### Jury Trial Demand

Pursuant to Rule 38 of the United States Court of International Trade, the United States demands a trial by jury as to all issues so triable.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By: /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Edward F. Kenny
EDWARD F. KENNY
Senior Trial Counsel

Of Counsel:
BRANDON T. ROGERS
Senior Attorney
U.S. Customs and Border Protection
Office of the Assistant Chief Counsel
6650 Telecom Drive
Indianapolis, Indiana 46278

Dated: February 8, 2024

/s/ Luke Mathers
LUKE MATHERS
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Suite 346
New York, New York 10278
Tel.: (212) 264-9236 or 9230
*Attorneys for Plaintiff*