UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:

_____
                                           :
UNITED STATES,                             :
                                           :
              Plaintiff,                   :
                                           :
       v.                                  :
                                           :    Court No. 24-00014
KOEHLER OBERKIRCH GMBH, f/k/a              :
PAPIERFABRIK AUGUST KOEHLER                :
SE, f/k/a PAPIERFABRIK AUGUST              :
KOEHLER AG; and KOEHLER PAPER              :
SE,                                        :
                                           :
              Defendants.                  :
_____:

## **ORDER**

Upon consideration of plaintiff's motion for alternative service, and upon consideration of all other papers and proceedings had herein; it is hereby

**ORDERED** that plaintiff's motion is granted; and it is further

**ORDERED** that plaintiff may effect service of process on defendants through their counsel of record in *Matra Americas, LLC v. United States*, Consol. Court No. 21-00632 in the United States Court of International Trade.

.


_____
                              JUDGE


Dated: _____
        New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:

_____

|  |  |  |
|---|---|---|
| UNITED STATES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Court No. 24-00014 |
| KOEHLER OBERKIRCH GMBH, f/k/a | : | |
| PAPIERFABRIK AUGUST KOEHLER | : | |
| SE, f/k/a PAPIERFABRIK AUGUST | : | |
| KOEHLER AG; and KOEHLER PAPER | : | |
| SE, | : | |
| | : | |
| Defendants. | : | |

_____ :

## **PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

EDWARD F. KENNY
Senior Trial Counsel

Of Counsel:
BRANDON T. ROGERS
Senior Attorney
U.S. Customs and Border Protection
Office of the Assistant Chief Counsel
6650 Telecom Drive
Indianapolis, Indiana 46278

LUKE MATHERS
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Suite 346
New York, New York 10278
Tel.: (212) 264-9236 or 9230
*Attorneys for Plaintiff*

Dated: April 22, 2024

i

## TABLE OF CONTENTS

BACKGROUND ................................................................................................ 1

I.    Koehler Dumps Underpriced Thermal Paper In The United States, Refuses To Pay Its Bills, And Transfers Assets Away To Koehler Paper SE................................................. 1

II.   Koehler And Koehler Paper SE Litigate In This Court As Plaintiffs Through U.S. Counsel, But Have Not Waived Service In This Case And Cannot Be Served Under The Hague Convention ........................................................................................... 3

ARGUMENT .................................................................................................. 5

I.    Standard Of Review ................................................................................ 5

II.   Alternative Service Of The Summons And Amended Complaint Through The Defendants' U.S. Counsel Is Warranted ........................................................... 7

   A.   No International Agreement Prohibits Service On Koehler And Koehler Paper SE Through Their U.S. Counsel ................................................................. 8

   B.   Service On Koehler And Koehler Paper SE Through Their U.S. Counsel Comports With Due Process ........................................................................... 9

   C.   The Government Lacks Feasible Alternatives To Effect Service On Koehler And Koehler Paper SE .......................................................................... 10

CONCLUSION .............................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*AngioDynamics, Inc. v. Biolitec AG,*
    780 F.3d 420 (1st Cir. 2015) .......................................................................................... 5, 10

*Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.,*
    168 F. Supp. 3d 1 (D.D.C. 2016) ........................................................................................ 6

*Convergen Energy LLC v. Brooks,*
    2020 WL 4038353 (S.D.N.Y. July 17, 2020) ..................................................................... 6

*Gamboa v. Ford Motor Co.,*
    2019 WL 8378038 (E.D. Mich. Nov. 15, 2019) ................................................................. 9

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
    27 F. Supp. 3d 1002 (N.D. Cal. 2014) ............................................................................... 6

*In re Mercedes-Benz Emissions Litig.,*
    2019 WL 2913309 (D.N.J. July 2, 2019) ........................................................................... 9

*In re S. Afr. Apartheid Litig.,*
    643 F. Supp. 2d 423 (S.D.N.Y. 2009) ............................................................................... 8

*In re Takata Airbag Prod. Liab. Litig.,*
    2017 WL 8809362 (S.D. Fla. Mar. 24, 2017) ................................................................ 8, 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    270 F.R.D. 535 (N.D. Cal. 2010) .................................................................................... 10

*Maale v. Kirchgessner,*
    2010 WL 11506082 (S.D. Fla. Mar. 16, 2010) .............................................................. 10

*Papierfabrik August Koehler SE v. United States,*
    843 F.3d 1373 (Fed. Cir. 2016) ......................................................................................... 4

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.,*
    672 F.3d 1041 (Fed. Cir. 2012) ...................................................................................... 1, 2

*United States ex rel. Bunk v. Birkart Globistics GmbH & Co.,*
    2010 WL 423247 (E.D. Va. Feb. 4, 2010) ................................................................ 4, 8, 9

*United States v. Mrvic,*
    652 F. Supp. 3d 409 (S.D.N.Y. 2023) ...................................................................... passim

*United States v. Univar USA, Inc.,*
    195 F. Supp. 3d 1312 (Ct. Int'l Trade 2016) ..................................................................... 5

*Vega v. Hastens Beds, Inc.*,
  342 F.R.D. 61 (S.D.N.Y. 2022) ............................................................................ 6

*Xilinx, Inc. v. Godo Kaisha IP Bridge 1*,
  246 F. Supp. 3d 1260 (N.D. Cal. 2017) .............................................................. 8

**Rules**

Fed. R. Civ. P. 4(f) .............................................................................................. 5, 6, 11

Fed. R. Civ. P. 4(f)(3) ...................................................................................... 5, 7, 9, 10

USCIT Rule 1 ....................................................................................................... 5, 10

USCIT Rule 4(e) ........................................................................................................ 5

USCIT Rule 4(e)(1) .................................................................................................... 3

USCIT Rule 4(e)(2) .................................................................................................. 10

USCIT Rule 4(e)(2)(C)(ii) ........................................................................................... 6

USCIT Rule 4(e)(3) ................................................................................................. 1, 5

USCIT Rule 4(g)(2) ............................................................................................. 1, 3, 5

USCIT Rule 4(*l*) ...................................................................................................... 11

**Other Authorities**

Fed. R. Civ. P. 4 advisory committee's notes (1993) .............................................. 10

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:

_____
                                        :
UNITED STATES,                          :
                                        :
                Plaintiff,              :
                                        :
        v.                              :
                                        :        Court No. 24-00014
KOEHLER OBERKIRCH GMBH, f/k/a           :
PAPIERFABRIK AUGUST KOEHLER             :
SE, f/k/a PAPIERFABRIK AUGUST           :
KOEHLER AG; and KOEHLER PAPER           :
SE,                                     :
                                        :
                Defendants.             :
_____:

## PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE

Pursuant to Rule 4(g)(2) and 4(e)(3) of the United States Court of International Trade (USCIT), plaintiff, the United States (the Government), respectfully moves this Court for an order authorizing the Government to effect service on defendants Koehler Oberkirch GmbH (Koehler) and Koehler Paper SE through their U.S. counsel of record in *Matra Americas, LLC v. United States*, Consol. Court No. 21-00632 in the United States Court of International Trade.

## BACKGROUND

### I.    Koehler Dumps Underpriced Thermal Paper In The United States, Refuses To Pay Its Bills, And Transfers Assets Away To Koehler Paper SE

"Dumping occurs when a foreign company sells a product in the United States at a lower price than what it sells that same product for in its home market." *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1046 (Fed. Cir. 2012). Foreign companies can undercut domestic ones (and, in turn, capture market share) by dumping goods in the United States. *Id.* To prevent this form of unfair competition, Congress empowered the United States Department of

Commerce ("Commerce") to investigate and remedy dumping by imposing antidumping duties, or additional duties on imported, dumped goods. *Id.* at 1047.

Koehler Oberkirch GmbH ("Koehler") is a German manufacturer of thermal paper that, for a time, served as its own importer here in the United States. After Koehler admitted that it engaged in a transshipment scheme through which it intentionally concealed reportable home market sales transactions, Commerce imposed antidumping duties at the rate of 75.36 percent *ad valorem* on Koehler's imports of its lightweight thermal paper to protect domestic industry. ECF No. 4 (Am. Compl.) at ¶¶ 13–15.[1]  Both this Court and the United States Court of Appeals for the Federal Circuit upheld the 75.36 percent rate. *Id.* at ¶¶ 16–17.

Yet Koehler refuses to pay the over $193 million in antidumping duties and pre-liquidation interest, as well as additional pre-judgment interest, it now owes the United States. *Id.* at ¶ 47.  Instead, shortly after that debt became final and conclusive, Koehler transferred away most of its assets to Koehler Paper SE, a newly formed parent company with the same address and management as Koehler in Germany. *See id.* at ¶¶ 29–39, 50.  Through this suit, the Government seeks to collect against both Koehler and Koehler Paper SE, as Koehler's successor-in-interest, the full amount of unpaid antidumping duties and pre-liquidation interest owed, plus pre- and post-judgment interest.  Am. Compl. at 10.

---

[1] The Amended Complaint has been redacted to prevent the public disclosure of financial information gleaned from documents that Koehler provided to the Government confidentially. The Government's complaint in a duty-collection action like this one cannot be filed under seal until a protective order has been entered.  Accordingly, once service has been made, the Government will file an unredacted version of the Amended Complaint after consulting with Koehler and Koehler Paper SE as to whether a protective order is necessary.

## II. Koehler And Koehler Paper SE Litigate In This Court As Plaintiffs Through U.S. Counsel, But Have Not Waived Service In This Case And Cannot Be Served Under The Hague Convention

Neither defendant, however, both of which are located in Baden-Württemberg, Germany, *id.* at ¶¶ 3, 30, has waived service of process of the summons and amended complaint in this case.  Nor does either defendant have a customs broker or other domestic agent for service of process.  Accordingly, after failing to obtain a waiver from the defendants' counsel in other matters, *see* Ex. A, the Government attempted to serve the summons and amended complaint on the defendants in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention").  *See* USCIT Rule 4(g)(2) and 4(e)(1) (providing that service outside the United States on a foreign corporation abroad may be accomplished "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention …").

In two responses dated March 13, 2024, the German district court in Baden-Württemberg declined to execute our requests for Hague Convention service.  The German district court did not decline the Government's requests for service on the ground that they failed to comply with the Hague Convention's procedural requirements; rather, it explained that because this suit "concerns claims under public law," it is not a "civil or commercial matter" to which "[t]he Hague Service Convention" is "applicable."  Ex. B.[2]

---

[2] To be clear, this declination is not unexpected, and was not a consequence of any procedural flaw in the Government's service request.  "As set forth in Article 1, the Hague Convention applies to all 'civil and commercial matters' in which there is an 'occasion to transmit a judicial or extrajudicial document abroad.' … Each country's Central Authority [designated for processing requests for service] then performs the task of actually effecting service of any judicial documents from abroad on defendants within its territory.  Under Article 4 of the Hague Convention, if the 'Central Authority considers that the request does not comply with the [Hague Convention] it shall promptly inform the applicant and specify its objections to

*(cont'd)*

Despite declining to waive service in this case, both Koehler and Koehler Paper SE have availed themselves of this Court as plaintiffs, challenging not only the same antidumping proceedings that imposed the duties at issue in this litigation but also new antidumping duties imposed on their recent exports of thermal paper. *See Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373 (Fed. Cir. 2016); ECF No. 10, *Koehler Paper SE and Koehler Oberkirch GmbH, f/k/a Papierfabrik August Koehler SE v. United States*, Court No. 21-00633 (Ct. Int'l Trade Jan. 21, 2022); ECF No. 26, *Matra Americas, LLC v. United States*, Consol. Court No. 21-00632 (Ct. Int'l Trade Mar. 15, 2022). In this new suit, Koehler and Koehler Paper SE are represented by U.S. counsel from the law firm Steptoe LLP. ECF No. 90, *Matra Americas, LLC v. United States*, Consol. Court No. 21-00632 (Ct. Int'l Trade Mar. 27, 2024). Although Steptoe does not represent Koehler and Koehler Paper SE in this matter and is not authorized to accept service on their behalf, the firm has recently communicated with them concerning this case. *See* Ex. C.

Accordingly, the Government now moves to effect service on the defendants through Steptoe, their U.S. counsel who represents them in a thermal paper antidumping case pending before this Court.[3]

---

the request.'" *United States ex rel. Bunk v. Birkart Globistics GmbH & Co.*, 2010 WL 423247, at *1 (E.D. Va. Feb. 4, 2010). German courts consider "public law" claims—including claims that seek "compensation for losses sustained by the United States government"—to be outside the scope of the Hague Convention's phrase "civil or commercial matter," "even though an American court would undoubtedly consider this action 'a civil or commercial matter' within the American legal system." *Id.* at *3–*4 (quoting a German appellate court decision).

[3] Copies of this motion and its exhibits have been served on Steptoe, as well as the defendants' negotiation counsel at Holland & Knight LLP, *see* Ex. C.

## ARGUMENT

### I.    Standard Of Review

USCIT Rule 4(e) sets forth the accepted means of service on individuals outside the United States and is made applicable to corporate entities like the defendants through USCIT Rule 4(g)(2).  "Unless federal law provides otherwise," under USCIT Rule 4(e), a defendant can be served outside the United States: "(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention … (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means by a method that is reasonably calculated to give notice[] …; or (3) by other means not prohibited by international agreement, as the court orders."

There appear to be no reported decisions addressing USCIT Rule 4(e)(3), but Federal Rule of Civil Procedure 4(f)(3) is identical[4] and the "court may refer for guidance to the rules of other courts."  USCIT Rule 1; *United States v. Univar USA, Inc.*, 195 F. Supp. 3d 1312, 1317 (Ct. Int'l Trade 2016).  Under USCIT Rule 4(e)(3)'s district-court counterpart, "[t]here is no hierarchy among the [paragraphs,]" meaning that "a plaintiff is not required to attempt service through the other provisions of" the rule "before the Court may order service pursuant to" paragraph (3).  *United States v. Mrvic*, 652 F. Supp. 3d 409, 412 (S.D.N.Y. 2023) (quotation omitted); *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 429 (1st Cir. 2015) ("By its plain terms, [paragraph (3)] does not require exhaustion of all possible methods of service before a

---

[4] The difference in the lettering is due to USCIT Rule 4's lacking a subdivision corresponding to Federal Rule of Civil Procedure 4(a), which lists summonses' required contents and provides that district courts can permit summonses' amendment.  To avoid confusion, we reference Federal Rule of Civil Procedure 4(f) by its paragraphs (1) through (3), which are identical to paragraphs (1) through (3) of USCIT Rule 4(e).

court may authorize service by 'other means.'"").  Whether to permit alternative service under paragraph (3) is committed to the Court's "sound discretion."  *Mrvic*, 652 F. Supp. 3d at 412.

Although a small minority of courts have reasoned that because Federal Rule of Civil Procedure 4(f) provides for service at a place outside the United States, paragraph (3) does not permit a court to order that a foreign defendant be served through U.S. counsel, *see Convergen Energy LLC v. Brooks*, 2020 WL 4038353, at *7 (S.D.N.Y. July 17, 2020), the analysis of these courts is unavailing.  "The U.S. counsel is a conduit to the service that is effectuated 'at a place not within any jurisdiction of the United States'"—the same way that "placing an item in the mail in the United States" can effect service abroad under paragraph (2)(C)(ii).  *Mrvic*, 652 F. Supp. 3d at 413 (quoting Fed. R. Civ. P. 4(f)).  Most courts thus hold that service through a foreign defendant's U.S. counsel comports with paragraph (3)'s plain text.  *See, e.g.*, *id.; Vega v. Hastens Beds, Inc.*, 342 F.R.D. 61, 66 (S.D.N.Y. 2022) ("[P]ermitting service on [the defendant] through retained United States counsel does not contravene the language of Rule 4(f), since service will be completed outside the United States."); *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 14 (D.D.C. 2016) ("This Court disagrees with the defendants' cramped interpretation of Rule 4(f) and instead holds that permitting service of a foreign individual or corporation through retained United States counsel does not run afoul of the rule's application to individuals and corporations, located in foreign countries, where service will be completed."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1002, 1009–10 (N.D. Cal. 2014) ("[C]ourt orders generally crafted under [paragraph (3)] require transmission of service papers to a foreign defendant via a domestic conduit like a law firm or agent—ultimately, the foreign individual is served and thereby provided notice outside a United States judicial district, in accordance with Rule 4's plain language.").

Under paragraph (3)'s plain text, "the first inquiry is whether the requested service"—here, service on German companies through their U.S. counsel—"is prohibited by international agreement, such as the Hague Convention." *Mrvic*, 652 F. Supp. 3d at 412. If it is not, then the requested service need only comport with due process. *Id.* (quotation omitted). That is, "[a] court must determine that the proposed method of service is reasonably calculated, under all the circumstances, to give actual notice to the party whose interests are to be affected by the suit or proceeding, and to afford [that party] an adequate opportunity to be heard." *Id.* (quotation omitted). "As part of that inquiry, courts must consider whether a [plaintiff] seeking leave to serve [a defendant] by counsel [has shown] adequate communication between the [defendant] and the attorney." *Id.* (quotation omitted).

## II.    Alternative Service Of The Summons And Amended Complaint Through The Defendants' U.S. Counsel Is Warranted

The Court should grant the Government's motion for alternative service. The Government has diligently attempted both to obtain a waiver of service and to serve the defendants in Germany pursuant to the Hague Convention, to no avail. All the while, the defendants are not only aware of this action but also actively litigating in this Court as plaintiffs, challenging antidumping duties imposed on new imports of their thermal paper. The Court should accordingly permit the Government to effect service on the defendants through their U.S. counsel, Steptoe—an alternative method of service that comports with due process and that Federal courts routinely order when service cannot be made on a German company pursuant to the Hague Convention.

### A. No International Agreement Prohibits Service On Koehler And Koehler Paper SE Through Their U.S. Counsel

First, service on the defendants through their U.S. counsel is not prohibited by international agreement.  USCIT Rule 4(e)(3).  The German district court explained that, because Germany does not consider the recovery of antidumping duties to be a "civil or commercial" matter, it would not execute the Government's request for service pursuant to the Hague Convention.  Ex. B.  This means that "substitute methods of service," including "service on local counsel," "can be used to serve foreign defendants pursuant to [paragraph (3)] without regard to the Hague Convention."  *United States ex rel. Bunk v. Birkart Globistics GmbH & Co.*, 2010 WL 423247, at *4 (E.D. Va. Feb. 4, 2010) (authorizing alternative service on a German company through U.S. counsel when the German courts concluded that a False Claims Act suit was not a "civil or commercial matter" to which the Hague Convention applied); *see, e.g.*, *Xilinx, Inc. v. Godo Kaisha IP Bridge 1*, 246 F. Supp. 3d 1260, 1264 (N.D. Cal. 2017) ("[S]ervice on a foreign corporation's counsel in the United States is an effective and reasonable method, and is not prohibited by the Hague Convention.").  And "[a]lthough Germany has expressly forbidden service by judicial agent, by mail, or by diplomat … it has not expressly forbidden numerous other potential avenues to insure that a defendant is aware of the allegations against it," such as service on a defendant's known U.S. counsel.  *In re S. Afr. Apartheid Litig.*, 643 F. Supp. 2d 423, 437–38 (S.D.N.Y. 2009).  Indeed, service on the defendants through "U.S.-based counsel sufficiently minimizes offense to German law," to the extent any offense exists.  *In re Takata Airbag Prod. Liab. Litig.*, 2017 WL 8809362, at *7 (S.D. Fla. Mar. 24, 2017).  No international agreement, therefore, prohibits serving the German defendants through their U.S. counsel.

**B.  Service On Koehler And Koehler Paper SE Through Their U.S. Counsel Comports With Due Process**

Second, effecting service on the defendants through Steptoe, their U.S. counsel, comports with due process.  The defendants have received actual notice of this lawsuit from, and have had "adequate communication" with, Steptoe: the firm has recently communicated with the defendants about this case, Ex. C, and currently represents them in proceedings concerning new imports of thermal paper, ECF No. 90, *Matra Americas, LLC v. United States*, Consol. Court No. 21-00632 (Ct. Int'l Trade Mar. 27, 2024).  Under similar circumstances, courts routinely conclude that service on a defendant through U.S. counsel satisfies due process.  *See, e.g.*, *In re Mercedes-Benz Emissions Litig.*, 2019 WL 2913309, at *3–*4 (D.N.J. July 2, 2019) (service on German defendant through U.S. counsel representing the defendant in similar cases comported with due process); *Gamboa v. Ford Motor Co.*, 2019 WL 8378038, at *2 (E.D. Mich. Nov. 15, 2019) (same); *In re Takata Airbag Prod. Liab. Litig.*, 2017 WL 8809362, at *7 (same); *Bunk*, 2010 WL 423247, at *4 (same).

And while Steptoe has represented that it is not authorized to accept service on the defendants' behalf, that "is not determinative as to whether the Court may permit alternate service on that counsel through" paragraph (3).  *Mrvic*, 652 F. Supp. 3d at 414.  "Instead, the question under [paragraph (3)], at this juncture, is whether service on the United States counsel is reasonably calculated, under all of the circumstances to notify [the defendants] of the action." *Id.* (quotation omitted).  Because Steptoe currently represents the defendants in similar proceedings in this Court and has recently communicated with them about this case, service on the defendants through Steptoe comports with due process.

### C.  The Government Lacks Feasible Alternatives To Effect Service On Koehler And Koehler Paper SE

Third, although the Government need not prove the futility of serving the defendants through other means, *AngioDynamics, Inc.*, 780 F.3d at 429, the Government has diligently attempted to obtain waivers of service from, and effect Hague Convention service on, the defendants.  The Government's efforts have been without success.  Paragraph (3) was built for these circumstances.  *See* Fed. R. Civ. P. 4 advisory committee's notes (1993) ("Other circumstances that might justify the use of additional methods include … the refusal of the Central Authority to serve a complaint seeking punitive damages or to enforce the antitrust laws of the United States.").  While it is true that the Government could attempt to effect service under paragraph (2) through "diplomatic channels" or "letters rogatory," resort to these time-consuming processes is unnecessary, particularly where the defendants know this case has been brought against them and are currently litigating in this Court as plaintiffs.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 270 F.R.D. 535, 537–38 (N.D. Cal. 2010) (authorizing service on a foreign company through its U.S. counsel, given that the letters rogatory process was time-consuming and that counsel was representing the company in related litigation); *Maale v. Kirchgessner*, 2010 WL 11506082, at *2 (S.D. Fla. Mar. 16, 2010) (similar, where "diplomatic channels would be cumbersome and time-consuming").  And, were there any doubt about the propriety of service on the defendants through their U.S. counsel, USCIT Rule 1 clarifies that this Court's rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Permitting speedy, cost-effective alternative service on defendants who are already aware of this action through their U.S. counsel honors USCIT Rule 1's mandate.

Accordingly, because service through the defendants' U.S. counsel is not prohibited by international agreement and comports with due process—and because the Government has tried yet failed to serve the defendants through other means—the Court should grant the Government's motion for alternative service.

*    *    *

One final note: if the defendants were located within the United States, the Rules of the Court would require service to be effected within 90 days.  *See* USCIT Rule 4(*l*).  However, USCIT Rule 4(*l*) "does not apply to service in a foreign country under Rule 4(e), 4(g)(2), or 4(i)(1)."  And, as explained, service on a foreign company through its U.S. counsel is "service in a foreign country under Rule 4(e)" and "4(g)(2)."  *See Mrvic*, 652 F. Supp. 3d at 413 ("The U.S. counsel is a conduit to the service that is effectuated 'at a place not within any jurisdiction of the United States.'" (quoting Fed. R. Civ. P. 4(f)).  Should it be necessary, however, the Government respectfully requests fourteen days after the date of entry of an order granting the Government's motion within which to effect service on the defendants through Steptoe.

## CONCLUSION

For these reasons, the Court should grant the Government's motion for alternative service and permit the Government to serve the defendants through Steptoe LLP, their U.S. counsel of record in *Matra Americas, LLC v. United States*, Consol. Court No. 21-00632 in the United States Court of International Trade.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General</td></tr>
<tr><td></td><td>PATRICIA M. McCARTHY<br>Director</td></tr>
<tr><td>By:</td><td>/s/ Justin R. Miller<br>JUSTIN R. MILLER<br>Attorney-In-Charge<br>International Trade Field Office</td></tr>
<tr><td></td><td>/s/ Edward F. Kenny<br>EDWARD F. KENNY<br>Senior Trial Counsel</td></tr>
</table>

Of Counsel:
BRANDON T. ROGERS
Senior Attorney
U.S. Customs and Border Protection
Office of the Assistant Chief Counsel
6650 Telecom Drive
Indianapolis, Indiana 46278

Dated: April 22, 2024

/s/ Luke Mathers
LUKE MATHERS
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Suite 346
New York, New York 10278
Tel.: (212) 264-9236 or 9230
*Attorneys for Plaintiff*

12

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:

| | |
|---|---|
| UNITED STATES, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | :    Court No. 24-00014 |
| KOEHLER OBERKIRCH GMBH, f/k/a | : |
| PAPIERFABRIK AUGUST KOEHLER | : |
| SE, f/k/a PAPIERFABRIK AUGUST | : |
| KOEHLER AG; and KOEHLER PAPER | : |
| SE, | : |
| | : |
| Defendants. | : |
| | : |

## CERTIFICATE OF COMPLIANCE

I, Luke Mathers, a trial attorney in the Department of Justice, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing Motion for Alternative Service, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 3,256 words.

/s/ Luke Mathers
LUKE MATHERS

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:

_____

|  |  |
|---|---|
| UNITED STATES, | : |
|  | : |
| Plaintiff, | : |
|  | : |
| v. | : |
|  | : |
| KOEHLER OBERKIRCH GMBH, f/k/a | : |
| PAPIERFABRIK AUGUST KOEHLER | : |
| SE, f/k/a PAPIERFABRIK AUGUST | : |
| KOEHLER AG; and KOEHLER PAPER | : |
| SE, | : |
|  | : |
| Defendants. | : |

Court No. 24-00014

_____

## <u>CERTIFICATE OF SERVICE</u>

I, Luke Mathers, a trial attorney in the Department of Justice, Civil Division, Commercial

Litigation Branch, International Trade Field Office, certify that on April 22, 2024, on behalf of

the United States, defendant, I caused the foregoing Motion for Alternative Service to be served

upon the following persons, at their last known addresses, by Federal Express:

1.  Mr. Thomas Trendl, Steptoe LLP, 1330 Connecticut Avenue N.W., Washington, D.C. 20036

2.  Mr. John Wood, Holland & Knight LLP, 800 17th Street N.W., Suite 1100, Washington, D.C. 20006

<u>/s/ Luke Mathers</u>
LUKE MATHERS