UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:

| | | |
|---|---|---|
| UNITED STATES, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | 1:24-cv-00014 |
| KOEHLER OBERKIRCH GMBH, f/k/a | : | Judge Gary S. Katzmann |
| PAPIERFABRIK AUGUST KOEHLER SE, | : | |
| f/k/a PAPIERFABRIK AUGUST | : | |
| KOEHLER AG; and KOEHLER PAPER | : | |
| SE, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR ALTERNATIVE SERVICE**

i

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. APPLICABLE LEGAL STANDARD......................................................................... 2

III. ARGUMENT.................................................................................................................. 3

   A. Service on U.S. Counsel Does Not Fall Under USCIT Rule 4(e) for "Serving an Individual in a Foreign Country" ........................................................................................ 3

   B. Service Through Diplomatic Channels Would Respect International Comity and Due Process Principles.................................................................................................................. 4

   C. The Government Has Made No Showing of the Need for Judicial Intervention.................. 5

IV. CONCLUSION .............................................................................................................. 7

# TABLE OF AUTHORITIES

**Cases**

*Codigo Music, LLC v. Televisa S.A. de C.V.*,
  No. 15-CIV-21737, 2017 WL 4346968 (S.D. Fla. Sept. 29, 2017) ............................................. 3

*Convergen Energy LLC v. Brooks*,
  No. 20-CV-3746 (LJL), 2020 WL 4038353 (S.D.N.Y. July 17, 2020) ....................................... 3

*Drew Techs., Inc. v. Robert Bosch, LLC*,
  No. 12-15622, 2013 WL 6797175 (E.D. Mich. Oct. 2, 2013) ................................................... 3

*Fujitsu Ltd. v. Belkin Int'l, Inc.*,
  782 F. Supp. 2d 868 (N.D. Cal. 2011) ...................................................................................... 7

*In GLG Life Tech Corp. Securities Litig.*,
  287 F.R.D. 262 (S.D.N.Y. 2012) ............................................................................................... 3

*In re Takata Airbag Prods. Liability Litig.*,
  No. 15-md-2599 (S.D. Fla. 2017) .............................................................................................. 5

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
  731 F. 2d 909 (D.C. Cir. 1984) .................................................................................................. 4

*MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharms., Inc.*,
  No. 1:17-CV-21996-UU, 2017 WL 10402588 (S.D. Fla. Oct. 10, 2017) .............................. 6-7

*Network Sys. Techs, LLC v. Texas Instrs. Inc.*,
  No. 2:22-CV-000482-RWS, 2023 WL 2743568 (E.D. Tex. Mar. 31, 2023) ............................. 5

*Tevra Brands LLC v. Bayer Healthcare LLC*,
  No. 19-CV-04312, 2020 WL 3432700 (N.D. Cal. June 23, 2020) ......................................... 2, 7

*Tucker v. Interarms*,
  186 F.R.D. 450 (N.D. Ohio 1999) ............................................................................................. 4

*Ulysses GmbH & Co. KG v. UlyssesWindows.com*,
  No. 2:18-CV-00202-RAJ, 2019 WL 3413211 (W.D. Wash. July 29, 2019) ............................. 6

*United States ex rel. Bunk v. Birkart Globistics GmbH & Co.*,
  No. 1:02-cv-1168 (E.D. Va. 2010) ............................................................................................ 5

*Xilinx, Inc. v. Godo Kaisha IP Bridge 1*,
  246 F. Supp. 3d 1260 (N.D. Cal. 2017) .................................................................................... 6

*Zithromia Limited v. Gazeus Negocios de Internet SA*,
   No. 17-CV-06475, 2017 WL 5612701 (N.D. Cal. Nov. 14, 2017) .............................................. 6

**Rules**

Federal Rule 4(f)(1) ................................................................................................................. 3

Federal Rule 4(f)(2) ................................................................................................................. 3

Federal Rule 4(f)(3) .............................................................................................................. 2, 3

USCIT Rule 4(d) ....................................................................................................................... 2

USCIT Rule 4(e) .................................................................................................................... 2, 3

USCIT Rule 4(e)(2) ............................................................................................................... 2, 5

USCIT Rule 4(e)(3) .................................................................................................................. 2

Defendants ("Koehler Oberkirch" and "Koehler Paper") oppose the Government's Motion for Alternative Service and respectfully request that the Court deny the Motion and direct the Government instead to serve Defendants in a manner envisioned by the Federal Rules of Civil Procedure ("Federal Rule(s)") and the Rules of the U.S. Court of International Trade ("USCIT Rule(s)") that respects the principles of international comity, namely, as suggested by the German District Court of Freiburg, by going through diplomatic channels.

I. **Introduction**

The current litigation centers around a dispute related to less than two years of imports that occurred between November 1, 2009, and October 31, 2011. ECF No. 4 (Am. Compl.) ¶ 15. The United States Department of Commerce ("Commerce") deemed these to be transshipments and assessed an antidumping penalty of 75.35 percent. The total amount sought by the Government in its Complaint for these imports, plus interest, totals almost 200 million dollars. *Id.* ¶ 24. However, despite the significance of the sum sought, the Government now seeks to avoid having to serve Defendants pursuant to the proper diplomatic channels expressly laid out in the USCIT Rules (and corollary Federal Rules) and suggested by the German court that denied the Government's request to serve Defendants pursuant to the Hague Convention. Instead, the Government asks the Court to enter an Order allowing service on Defendants' U.S.-based counsel in a separate litigation, despite the fact that the rules do not permit such service, because such counsel are located within a judicial district of the United States, not a foreign country, and are not authorized to accept service of process on behalf of Defendants in this matter, and despite the fact that the Government has not argued that it will suffer any cognizable prejudice if it is required to seek to serve Defendants through diplomatic channels, as recommended by the German court (which recommendation follows public international law). Defendants ask the Court to require the Government to respect

the German court's recommendation regarding the Government's attempt to serve German citizens and deny the Government's motion for alternative service.

## II. <u>**Applicable Legal Standard**</u>

"The decision to provide an order under [Federal] Rule 4(f)(3) is within the sound discretion of the Court, which must determine whether the particularities and necessities of a given case require alternative service of process." *Tevra Brands LLC v. Bayer Healthcare LLC*, No. 19-CV-04312, 2020 WL 3432700, at *3 (N.D. Cal. June 23, 2020). Defendants agree with the Government that USCIT Rule 4(e)[1] allows a defendant to be served "at a place not within any judicial district of the United States "(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . . (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means by a method that is reasonably calculated to give notice[] . . . ; or (3) by other means not prohibited by international agreement, as the court orders." However, the Government in its Motion omits that under USCIT Rule 4(e)(2), two enumerated methods for service in a method reasonably calculated to give notice include: "(A) as prescribed by the foreign country's law for service in that country in its courts of general jurisdiction; or (B) as the foreign authority directs in response to a letter rogatory or letter of request."

Defendants also agree with the Government that "[w]hether to permit alternative service under [USCIT Rule 4(e)(3)] is committed to the Court's sound discretion." Motion at 11 (quotation omitted). Under USCIT Rule 4(d), however, "an individual . . . may be served in a judicial district

---

[1] Defendants agree with the Government that USCIT Rule 4(e)(3) is identical to Federal Rule 4(f)(3) and also note that USCIT Rule 4(d) is substantially similar to Federal Rule 4(e), except that USCIT Rule 4(d)(1) does not provide for service by following state law in the state in which "the district court is located." Both the USCIT Rule 4(d) and Federal Rule 4(e) provide for service by following state law "in the state where service is made."

2

in the United States" in several enumerated ways, but <u>does not</u> allow for a court to order "other means" of service.

"[W]hile there is no requirement that a party exhaust efforts to effect service pursuant to [Federal] Rules 4(f)(1) or 4(f)(2), the moving party must make some showing of the need for judicial intervention." *Convergen Energy LLC v. Brooks*, 20-CV-3746 (LJL), 2020 WL 4038353, at *4 (S.D.N.Y. July 17, 2020). The purpose of this inquiry is "to accord with 'principles of comity' by 'encourag[ing] the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process." *Id.* (quoting *In GLG Life Tech Corp. Securities Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (citations omitted).

### III. <u>Argument</u>

*A.    Service on U.S. Counsel Does Not Fall Under USCIT Rule 4(e) for "Serving an Individual in a Foreign Country"*

As the Government acknowledges at the outset of its Motion, courts have found that the request to effectuate service on a foreign defendant through counsel located in the U.S. "runs squarely up against the language of [Federal] Rule 4(f) and the structure of [Federal] Rule 4 as a whole." *Convergen*, 2020 WL 4038353, at *7; *see also Codigo Music, LLC v. Televisa S.A. de C.V.*, No. 15-CIV-21737, 2017 WL 4346968, at *13 (S.D. Fla. Sept. 29, 2017) (finding that alternative service must "contain, at least, some component of service that will occur outside of the United States"); *Drew Techs., Inc. v. Robert Bosch, LLC*, No. 12-15622, 2013 WL 6797175, at *3 (E.D. Mich. Oct. 2, 2013) ("Court ordered service [on German defendants] under Rule 4(f)(3) is clearly limited to methods of service made outside of the United States."))). USCIT Rule 4(e) is applicable only to service that occurs "*at a place* not within any judicial district of the United States." (emphasis added). The USCIT Rule does not refer to an individual (or, here, corporation) outside

3

of the United States, but rather the place of service. Here, because the Government is proposing that the place of service be in the United States on U.S. counsel, Rule 4(e) does not apply.

> B. *Service Through Diplomatic Channels Would Respect International Comity and Due Process Principles*

The German Central Authority (the District Court of Freiburg) was very clear and "request[ed]" that the Government's request for service "should be made through diplomatic channels, so that the relevant administrative authorities can take action if necessary." ECF 7-2 at 1; *see also id.* at 5. What is more, the Government admits in its Motion that it expected this response. *See* Motion at 3 n.2. To ignore the German court would violate principles of international comity, which requires that foreign and public international law be given effect in U.S. courts to "foster[] international cooperation and encourage[] reciprocity, thereby promoting predictability and stability through satisfaction of mutual expectations." *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F. 2d 909, 937 (D.C. Cir. 1984). As the court in *Tucker v. Interarms* found, "By giving effect to [a foreign country]'s apparent preference that letters rogatory be used to effectuate service of process, the interests of both forums are advanced - the foreign [state] because its laws and policies have been vindicated; the domestic country because international cooperation and ties have been strengthened. The rule of law is also encouraged, which benefits all nations." 186 F.R.D. 450, 452 (N.D. Ohio 1999) (quoting *Laker Airways*, 731 F.2d at 937) (denying motion for alternative service of process).

There are serious issues of international relations at stake in this case, which involves application of a punitive tariff rate in connection with an allegedly unfair trade practice spanning a relatively short period of time. The resulting judgment of nearly two hundred million U.S. dollars is one that outside observers, including our close ally and trade partner, the Federal Republic of Germany, is likely to view as disproportionate. This Court should not accept the U.S. government's

invitation to bypass diplomatic channels by means of alternative service, and thereby deprive the German government of an opportunity to assess whether it might have a beneficial role to play in helping to negotiate an equitable resolution of the dispute, without the necessity of prolonged litigation before this Court. The cases cited in the Government's Motion where courts granted alternative service did not deal with any similar request by a Central Authority specifically requesting service through diplomatic channels. *See United States ex rel. Bunk v. Birkart Globistics GmbH & Co.*, No. 1:02-cv-1168, at ECF 507-7 (E.D. Va. 2010) (translating German court correspondence that did not include a request for service through diplomatic channels, but rather simply denied the service request under the Hague Convention); *In re Takata Airbag Prods. Liability Litig.*, No. 15-md-2599, at ECF No. 1351-8 (S.D. Fla. 2017) (same).

Moreover, as the Government recognizes, the Steptoe firm "does not represent Koehler and Koehler Paper SE in this matter and is not authorized to accept service on their behalf." Motion at 4. A recent case from the Eastern District of Texas is instructive – that court would not authorize alternative service on U.S. counsel where that counsel, who represented a German company in a separate matter, did not accept service. *Network Sys. Techs, LLC v. Texas Instrs. Inc.*, No. 2:22-CV-000482-RWS, 2023 WL 2743568, at *1, *4 (E.D. Tex. Mar. 31, 2023).

    C.    *The Government Has Made No Showing of the Need for Judicial Intervention*

The Government has not met its burden in asking the Court to set aside the means of service enumerated in USCIT Rule 4(e)(2), including by way of the "diplomatic channels" requested by the German courts. The Government, which now admits knowing that service could not proceed under the Hague Convention, chose not to proceed with letters rogatory or letter of request to the German authorities. Its only excuse for not doing so is the conclusory statement that "resort[ing] to these time-consuming processes is unnecessary." Motion at 10. Courts have denied motions for alternative service where plaintiffs "rel[ied] only on a generic comment by the U.S. State

5

Department that service in Brazil through letters rogatory can be time-consuming and 'problematic.'" *Zithromia Limited v. Gazeus Negocios de Internet SA*, No. 17-CV-06475, 2017 WL 5612701, at *1 (N.D. Cal. Nov. 14, 2017); *see also Ulysses GmbH & Co. KG v. UlyssesWindows.com*, No. 2:18-CV-00202-RAJ, 2019 WL 3413211, at *3 (W.D. Wash. July 29, 2019) (noting that possible issues with service and the desire to move a case forward expeditiously are not sufficient to necessitate court intervention).

Moreover, here, the Government's claims are based on conduct that occurred from 2009 to 2011. It makes no argument that there is any ongoing harm necessitating service occur with speed in a manner that contravenes the German court's request to proceed through diplomatic channels. Moreover, unlike cases cited by the Government in its Motion, there are no allegations that Defendants are evading service, or that they are otherwise unlocatable. For example, in *Xilinx, Inc. v. Godo Kaisha IP Bridge 1*, the court authorized alternative service on counsel of record in the matter at hand where such counsel "declined to accept service in an apparent fit of pique, and the record of events after that indicates that [the defendant] has been unduly difficult to serve in a manner reflecting the uncooperative spirit manifested in [counsel]'s words". 246 F. Supp. 3d 1260, 1263 (N.D. Cal. 2017). There, the court expressed serious concerns with the unprofessional and unnecessarily malicious interactions between the parties' respective counsel and noted that the defendant had been "uncooperative at every turn." *Id.* at 1264. These facts are entirely unlike the current circumstances, where the Government simply attempted to serve the Defendants via the Hague Convention and was advised by the German Central Authority that it should proceed through diplomatic channels instead. Under these circumstances, service on Defendants' U.S. counsel is unnecessary. *See MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharms., Inc.*, No. 1:17-CV-21996-UU, 2017 WL 10402588, at *2 (S.D. Fla. Oct. 10, 2017) ("The Court also

concludes that service on domestic counsel is not warranted here. Typically, courts permit service on domestic counsel where the address of foreign defendants is unknown, the foreign defendant has evaded service, or the failure to permit such service will result in long delays.").

Similarly, in *Fujitsu Ltd. v. Belkin Int'l, Inc.*, the Court could not "justify" allowing alternative service of process simply because "effecting service of process through the letters rogatory process is expensive and time-consuming." 782 F. Supp. 2d 868, 879-80 (N.D. Cal. 2011). That court found that where defendants had not evaded service, the defendants' counsel had not been authorized to accept service, and counsel was not representing the defendants in an action that was consolidated with the action where alternative service was sought, it was "inappropriate to order service" on the defendants' U.S. counsel. *Id.* at 881. Finally, in the *Tevra Brands* case, the court found that alternative service was not justified where there were no allegations that German defendants were evasive or could not be located, even where U.S.-based counsel was in contact with those defendants "and is prepared to represent their positions." *Tevra Brands*, 2020 WL 3432700, at *5 (N.D. Cal. June 23, 2020). As in these cases, the Court should find that alternative service on Defendants' U.S.-based counsel is not warranted.

**IV. Conclusion**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Alternative Service.

Dated May 13, 2024　　　　　　　　　　　　Respectfully submitted:

　　　　　　　　　　　　　　　　　　　　　**HOLLAND & KNIGHT LLP**
　　　　　　　　　　　　　　　　　　　　　*Counsel for Defendants Koehler Oberkirch*
　　　　　　　　　　　　　　　　　　　　　*GMBH and Koehler Paper SE*

　　　　　　　　　　　　　　　　　　　　　 /s/ *Andrew McAllister*
　　　　　　　　　　　　　　　　　　　　　Andrew McAllister
　　　　　　　　　　　　　　　　　　　　　 andrew.mcallister@hklaw.com

Anna P. Hayes
anna.hayes@hklaw.com
John F. Wood (*admission pending*)
john.f.wood@hklaw.com
Stuart G. Nash (*admission pending*)
stuart.nash@hklaw.com
800 17th Street NW, Suite 1100
Washington, DC 20006
(202) 469-5628

# CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that Defendants' Opposition to Plaintiff's Motion for Alternative Service complies with the word limitation pursuant to Chambers Procedures. Relying on the word count of the word-processing system used to prepare the brief, the foregoing contains 2,184 words.

/s/ *Andrew McAllister*
Andrew McAllister