UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: GARY S. KATZMANN, JUDGE

_____
                                          :
UNITED STATES,                            :
                                          :
                        Plaintiff,        :
                                          :
            v.                            :
                                          :     Court No. 24-00014
KOEHLER OBERKIRCH GMBH, f/k/a             :
PAPIERFABRIK AUGUST KOEHLER               :
SE, f/k/a PAPIERFABRIK AUGUST             :
KOEHLER AG; and KOEHLER PAPER             :
SE,                                       :
                                          :
                        Defendants.       :
_____:

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR ALTERNATIVE SERVICE

<table>
<tr><td></td><td>BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General</td></tr>
<tr><td></td><td>PATRICIA M. McCARTHY<br>Director</td></tr>
<tr><td></td><td>JUSTIN R. MILLER<br>Attorney-In-Charge<br>International Trade Field Office</td></tr>
<tr><td></td><td>EDWARD F. KENNY<br>Senior Trial Counsel</td></tr>
<tr><td>Of Counsel:<br>BRANDON T. ROGERS<br>Senior Attorney<br>U.S. Customs and Border Protection<br>Office of the Assistant Chief Counsel<br>8899 E. 56th Street<br>Indianapolis, Indiana 46249<br><br>Dated: May 28, 2024</td><td>LUKE MATHERS<br>Trial Attorney<br>Department of Justice, Civil Division<br>Commercial Litigation Branch<br>26 Federal Plaza, Suite 346<br>New York, New York 10278<br>Tel.: (212) 264-9236 or 9230<br>*Attorneys for Plaintiff*</td></tr>
</table>

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

   I.   USCIT Rule 4(e)(3) Permits Service On The Defendants Through Their U.S. Counsel .... 2

   II.   Service On The Defendants Through Their U.S. Counsel Preserves International Comity 3

   III.   Judicial Intervention Is Warranted .................................................................. 6

CONCLUSION ...................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*C.F.T.C. v. Nahas*,
  738 F.2d 487 (D.C. Cir. 1984)......................................................................... 4

*In re OnePlus Tech. (Shenzhen) Co., Ltd.*,
  2021 WL 4130643 (Fed. Cir. Sept. 10, 2021) ............................................... 2

*In re S. Afr. Apartheid Litig.*,
  643 F. Supp. 2d 423 (S.D.N.Y. 2009) ............................................................ 3

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
  626 F.3d 1222 (Fed. Cir. 2010) ................................................................... 2, 3

*Papierfabrik August Koehler SE v. United States*,
  180 F. Supp. 3d 1211 (Ct. Int'l Trade 2016), *aff'd*, 710 F. App'x 889 (Fed. Cir. 2018),
  *cert. denied*, 139 S. Ct. 1290 (2019)............................................................. 5

*Papierfabrik August Koehler SE v. United States*,
  7 F. Supp. 3d 1304 (Ct. Int'l Trade 2014), *aff'd*, 843 F.3d 1373 (Fed. Cir. 2016),
  *cert. denied*, 138 S. Ct. 555 (2017).............................................................. 5

*Russell Brands, LLC v. GVD Int'l Trading, SA*,
  282 F.R.D. 21 (D. Mass. 2012) ...................................................................... 4

*S.E.C. v. Beisinger Indus. Corp.*,
  552 F.2d 15 (1st Cir. 1977) ............................................................................ 6

*Tucker v. Interarms*,
  186 F.R.D. 450 (N.D. Ohio 1999) ............................................................... 3, 4

*Ulysses GmbH & Co. KG v. UlyssesWindows.com*,
  2019 WL 3413211 (W.D. Wash. July 29, 2019)........................................... 4, 8

*United States ex rel. Bunk v. Birkart Globistics GmbH & Co.*,
  2010 WL 423247 (E.D. Va. Feb. 4, 2010) ..................................................... 4

*United States v. Mrvic*,
  652 F. Supp. 3d 409 (S.D.N.Y. 2023) ............................................................ 6

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  486 U.S. 694 (1988) ....................................................................................... 7

*Zithromia Ltd. v. Gazeus Negocios De Internet SA*,
  2017 WL 5612701 (N.D. Cal. Nov. 14, 2017) .............................................. 7

**Rules**

Federal Rule of Civil Procedure 4(f)(3) ....................................................................... 2, 3

USCIT Rule 1 ..................................................................................................................... 2

USCIT Rule 4(e) .............................................................................................................. 4, 7

USCIT Rule 4(e)(2) ............................................................................................................. 6

USCIT Rule 4(e)(3) .................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 4 advisory committee's notes (1993) ....................................................... 3

U.S. Dep't of State, *Preparation of Letters Rogatory*,
   https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-
   asst/obtaining-evidence/Preparation-Letters-Rogatory.html ...................................... 6

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: GARY S. KATZMANN, JUDGE

_____
                                         :
UNITED STATES,                           :
                                         :
            Plaintiff,                   :
                                         :
      v.                                 :
                                         :      Court No. 24-00014
KOEHLER OBERKIRCH GMBH, f/k/a            :
PAPIERFABRIK AUGUST KOEHLER              :
SE, f/k/a PAPIERFABRIK AUGUST            :
KOEHLER AG; and KOEHLER PAPER            :
SE,                                      :
                                         :
            Defendants.                  :
_____:

## <u>PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR ALTERNATIVE SERVICE</u>

Pursuant to this Court's May 14, 2024 Order, ECF No. 16, plaintiff, the United States

(the Government), respectfully submits this reply in support of its motion for alternative service.

## <u>INTRODUCTION</u>

Defendants Koehler Oberkirch GmbH and Koehler Paper SE argue that they should not

be required to respond to this enforcement action, despite availing themselves of this Court as

plaintiffs, unless the Government first attempts service of the summons and amended complaint

through "diplomatic channels."  ECF No. 11 at 4–5.  Service in this manner is not necessary to

apprise defendants of this action and is not required by international agreement.  Nor do

defendants deny that such service would cause delay.  They instead argue that service through

"diplomatic channels" would allow them to bypass this Court and lobby for a political solution to

their debts.  *See id.*

United States Court of International Trade (USCIT) Rule 4(e)(3) empowers this Court to

permit service on the defendants through their U.S. counsel of record and does not require the

Government to attempt service through all other possible means. As USCIT Rule 1 explains, all Rules, including Rule 4, "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." The Court should therefore grant the Government's motion and permit service on the defendants through either their counsel of record in this matter or their counsel of record in *Matra Americas, LLC v. United States*, Consol. Court No. 21-00632.

## ARGUMENT

### I.    USCIT Rule 4(e)(3) Permits Service On The Defendants Through Their U.S. Counsel

As we explained in our motion, USCIT Rule 4(e)(3) (paragraph (3), for short) allows the Court to order service on a foreign corporation through its U.S. counsel. ECF No. 7 at 6. The defendants' argument to the contrary, ECF No. 11 at 3–4, is unavailing. The Government's reading of paragraph (3) is consistent with how the majority of federal courts interpret its district-court analog—including the Federal Circuit, which has explained that "substituted service" on a foreign corporation's U.S. counsel is proper under Federal Rule of Civil Procedure 4(f)(3) even if it means service will be effected within the United States. *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1238–40 (Fed. Cir. 2010) (applying Ninth Circuit law); *In re OnePlus Tech. (Shenzhen) Co., Ltd.*, 2021 WL 4130643, at *3 (Fed. Cir. Sept. 10, 2021) (explaining that *Nuance* "rejected the argument that Rule 4(f)(3) cannot be used to authorize alternative service that is effected within the United States"). Paragraph (3) thus allows the Court to order service on the defendants through their U.S. counsel.

## II.    Service On The Defendants Through Their U.S. Counsel Preserves International Comity

The defendants' primary contention is that because the German district court "request[ed]" that the Government's requests for service "should be made through diplomatic channels," the Government *must* attempt such service before resorting to paragraph (3).  ECF No. 11 at 4.  To "ignore" this request, the defendants say, would "violate principles of international comity" and not promote "[t]he rule of law."  *Id.* (quoting *Tucker v. Interarms*, 186 F.R.D. 450, 452 (N.D. Ohio 1999)).  The defendants' arguments fall short.

For one, as already explained, paragraph (3) is not a provision of last resort.  ECF No. 7 at 5–6.  "[I]t stands independently, on equal footing" with its preceding paragraphs.  *Nuance*, 626 F.3d at 1239 (quotation omitted).  And its use "is particularly appropriate where a signatory to the Hague Service Convention has 'refused to cooperate for substantive reasons.'"  *Id.* (quoting Fed. R. Civ. P. 4 advisory committee's notes (1993)).  Here, Germany, a signatory to the Hague Convention, has refused to serve the defendants on substantive grounds: German courts interpret the Convention to not apply to "public law" matters like suits brought by the United States.  ECF No. 7-2.  Alternative service pursuant to paragraph (3) is thus warranted, despite the possibility that service might be achieved through "diplomatic channels."

For another, service on the defendants through their U.S. counsel would not offend international comity.  "Comity dictates that this Court cannot order the German [district court] to assist this litigation by transmitting judicial documents, but it does not shield German defendants entirely."  *In re S. Afr. Apartheid Litig.*, 643 F. Supp. 2d 423, 438 (S.D.N.Y. 2009) (authorizing alternative service on a German company's U.S. counsel under Fed. R. Civ. P. 4(f)(3)).  The German district court merely rejected service under the Hague Convention and requested that the Government attempt service through "diplomatic channels"—it did not claim "that service would

3

offend state sovereignty." *United States ex rel. Bunk v. Birkart Globistics GmbH & Co.*, 2010 WL 423247, at *4 n.8 (E.D. Va. Feb. 4, 2010). Indeed, "[w]hen process in the form of a complaint is served extraterritorially, the informational nature of the process renders the act of service relatively benign in terms of infringement on the foreign nation's sovereignty." *C.F.T.C. v. Nahas*, 738 F.2d 487, 494 n.14 (D.C. Cir. 1984) (distinguishing between service of a complaint, which does not infringe on a foreign nation's sovereignty, and service of an investigative subpoena, which can). The defendants have thus cited no authority holding that the German district court's request must be prioritized over this Court's Rules, which provide that such a request is just one of a handful of alternative means of service. *See* USCIT Rule 4(e).

The defendants instead rely on *Tucker v. Interarms*, 186 F.R.D. 450 (N.D. Ohio 1999), for the proposition that service of the summons and amended complaint through letters rogatory alone would promote international comity. ECF No. 11 at 4. But *Tucker* has little persuasive value. It did not address paragraph (3) at all, and its analysis was specific to Brazil, which at the time was a signatory to the Inter-American Convention on Letters Rogatory but not the Hague Convention. 186 F.R.D. at 451–52; *Ulysses GmbH & Co. KG v. UlyssesWindows.com*, 2019 WL 3413211, at *1 (W.D. Wash. July 29, 2019) (noting that the Hague Convention entered into force in Brazil on June 1, 2019). And *Tucker* "based its decision, at least in part, on [*C.F.T.C. v. Nahas*], where, as described, a distinction was made between" service of a complaint "and service of subpoenas." *Russell Brands, LLC v. GVD Int'l Trading, SA*, 282 F.R.D. 21, 26 (D. Mass. 2012) (distinguishing *Tucker*). *Tucker* overlooked that distinction. Here, though, Germany has not objected to service of a mere summons and amended complaint in the manner that the Government proposes. Principles of international comity therefore do not prevent service on the defendants through their U.S. counsel.

4

The defendants also suggest, without any support, that Germany would "view as disproportionate" the "punitive tariff rate" that this Court upheld; thus, the defendants say, the Court should reject the Government's "invitation to bypass diplomatic channels" because Germany "might have a beneficial role to play in helping to negotiate an equitable resolution of th[is] dispute[.]"  ECF No. 11 at 4–5.   This argument is problematic for a number of reasons.

First, as explained, the Government is not "bypassing" any required procedures. Attempting service through "diplomatic channels" is not a precondition to requesting alternative means of service under paragraph (3), as the defendants themselves acknowledge, ECF No. 11 at 3.

Second, this Court twice held that the 75.36 percent dumping margin that resulted in the antidumping duties and pre-liquidation interest owed in this case was not, in fact, "punitive," and the Federal Circuit twice affirmed.  *Papierfabrik August Koehler SE v. United States*, 180 F. Supp. 3d 1211 (Ct. Int'l Trade 2016), *aff'd*, 710 F. App'x 889 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 1290 (2019); *Papierfabrik August Koehler SE v. United States*, 7 F. Supp. 3d 1304 (Ct. Int'l Trade 2014), *aff'd*, 843 F.3d 1373 (Fed. Cir. 2016), *cert. denied*, 138 S. Ct. 555 (2017).  The defendants' continued characterization of the rate as "punitive" is no response to the Government's arguments.

And third, the defendants' argument reveals that their plea for service through "diplomatic channels" is really a request that service be delayed, or the need for service ultimately vitiated, through a political process.  Specifically, the defendants hope that the "German government" would use service through "diplomatic channels" as an "opportunity" to negotiate a resolution of this case.  ECF No. 11 at 5.  "The purpose of service of process," however, "is to give a party notice of the proceedings in sufficient time to prepare an adequate

defense." *S.E.C. v. Beisinger Indus. Corp.*, 552 F.2d 15, 20 (1st Cir. 1977). That the defendants anticipate "diplomatic channels" would be used not for the purpose of providing notice but rather for the purpose of somehow obviating "prolonged litigation" through political pressure, ECF No. 11 at 5, is thus all the more reason to order alternative service through their U.S. counsel.[1]

For all these reasons, service on the defendants through their U.S. counsel promotes the rule of law and would not offend principles of international comity.

### III.    Judicial Intervention Is Warranted

Next, the defendants argue that the Government has not "met its burden in asking the Court to set aside the means of service enumerated in USCIT Rule 4(e)(2)." ECF No. 11 at 5. They also criticize the Government for attempting service under the Hague Convention rather than letters rogatory despite its likely futility. *Id.* Neither contention has merit.

Once again, as explained, paragraph (3) is one of multiple alternatives for accomplishing service. "There is no hierarchy among the [paragraphs,]" so the Government "is not required to attempt service through" paragraph (2) "before the Court may order service pursuant to" paragraph (3). *United States v. Mrvic*, 652 F. Supp. 3d 409, 412 (S.D.N.Y. 2023) (quotation omitted). The only burden that the Government bears is to show that service through U.S. counsel is not "prohibited by international agreement" and that such service comports with due

---

[1] The defendants appear to be confusing "diplomatic channels" of service with "diplomacy." "Diplomatic channels" are "a formal system of communication between governments. This system is used to transmit letters rogatory to a foreign government so that they may be directed to the appropriate foreign court." U.S. Dep't of State, *Preparation of Letters Rogatory*, https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/obtaining-evidence/Preparation-Letters-Rogatory.html (last visited May 28, 2024). And "[l]etters rogatory," which "may take a year or more" to execute, "are requests from courts in one country to the courts of another country requesting the performance of an act which, if done without the sanction of the foreign court, could constitute a violation of that country's sovereignty." *Id.* Service through "diplomatic channels" is thus not a diplomatic negotiation but rather a time-consuming formal procedure.

process.  ECF No. 7 at 7.  The Government has shown both; the defendants have not contended otherwise.

And "compliance with the [Hague] Convention is mandatory in all cases to which it applies[.]"  *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988).  The Government attempted service pursuant to the Hague Convention to honor that mandate, despite the likelihood that the German district court would refuse on substantive grounds.  USCIT Rule 4(e) imposes no obligation to forgo the Hague Convention and alternative means of service in favor of time-consuming service through "diplomatic channels"—a process that the defendants hope will lead to service being used as a bargaining chip to escape their debt.

All the defendants can say in response is that the Government conclusorily asserts that service through "diplomatic channels" would be time-consuming and that there is no need for speed because the defendants have not evaded service.  ECF No. 11 at 5–7.  But neither of these points are relevant to the legal analysis of whether the Court should order alternative service under paragraph (3).  ECF No. 7 at 10.

Even if they did factor in, the defendants do not dispute the Government's assertion, supported by citations, that service through "diplomatic channels" would, in fact, be time-consuming.  The cases that the defendants cite involving service in Brazil, moreover, are inapposite.  *Zithromia Ltd. v. Gazeus Negocios De Internet SA*, decided before Brazil's accession to the Hague Convention, declined to order alternative service because the plaintiffs did "not state that defendants have refused or evaded service" or "point to any specific facts indicating an inability to serve defendants in Brazil."  2017 WL 5612701, at *1 (N.D. Cal. Nov. 14, 2017) (explaining that the plaintiffs filed a request for alternative service with their complaint without waiting for the defendants to respond to their attempt at service).  And *Ulysses* rejected

7

alternative service on the ground that the plaintiff, who had not yet attempted Hague Convention service, "identified physical addresses for each of the defendants," none of whom were "attempting to avoid service of process."  2019 WL 3413211, at *3.

By contrast, here, the Government tried but was unable to serve the defendants in Germany under the Hague Convention.  The defendants avail themselves of this Court as plaintiffs and have actual knowledge of this case—yet refuse to waive service or accept service through their U.S. counsel when called to account by the Government as defendants.  Such actions are simply an attempt to evade their long-outstanding debt.  Indeed, they have not tendered any portion of the $200 million balance owed to the United States.  Under these circumstances, alternative service through the defendants' U.S. counsel is justified.

**CONCLUSION**

For these reasons, the Court should grant the Government's motion for alternative service and permit the Government to serve the defendants through either their U.S. counsel of record in this case, or Steptoe LLP, their U.S. counsel of record in *Matra Americas, LLC v. United States*, Consol. Court No. 21-00632.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Edward F. Kenny
EDWARD F. KENNY
Senior Trial Counsel

Of Counsel:                                          /s/ Luke Mathers
BRANDON T. ROGERS                      LUKE MATHERS
Senior Attorney                                    Trial Attorney
U.S. Customs and Border Protection    Department of Justice, Civil Division
Office of the Assistant Chief Counsel   Commercial Litigation Branch
8899 E. 56th Street                            26 Federal Plaza, Suite 346
Indianapolis, Indiana 46249               New York, New York 10278
                                                         Tel.: (212) 264-9236 or 9230
Dated: May 28, 2024                         *Attorneys for Plaintiff*

9

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: GARY S. KATZMANN, JUDGE

_____
                                              :
UNITED STATES,                                :
                                              :
                    Plaintiff,                :
                                              :
            v.                                :
                                              :     Court No. 24-00014
KOEHLER OBERKIRCH GMBH, f/k/a                 :
PAPIERFABRIK AUGUST KOEHLER                   :
SE, f/k/a PAPIERFABRIK AUGUST                 :
KOEHLER AG; and KOEHLER PAPER                 :
SE,                                           :
                                              :
                    Defendants.               :
_____      :

## CERTIFICATE OF COMPLIANCE

      I, Luke Mathers, a trial attorney in the Department of Justice, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing reply, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 2,259 words.

/s/ Luke Mathers
LUKE MATHERS

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: GARY S. KATZMANN, JUDGE

| | |
|---|---|
| UNITED STATES, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | Court No. 24-00014 |
| KOEHLER OBERKIRCH GMBH, f/k/a : | |
| PAPIERFABRIK AUGUST KOEHLER : | |
| SE, f/k/a PAPIERFABRIK AUGUST : | |
| KOEHLER AG; and KOEHLER PAPER : | |
| SE, : | |
| : | |
| Defendants. : | |
| : | |

## <u>CERTIFICATE OF SERVICE</u>

I, Luke Mathers, a trial attorney in the Department of Justice, Civil Division, Commercial Litigation Branch, International Trade Field Office, certify that on May 28, 2024, on behalf of the United States, I caused the foregoing reply to be served upon Mr. Thomas Trendl, Steptoe LLP, 1330 Connecticut Avenue N.W., Washington, D.C. 20036, by FedEx.

<u>/s/ Luke Mathers</u>
LUKE MATHERS