Slip Op. 24-111

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES, <br><br> Plaintiff, <br><br> v. <br><br> KOEHLER OBERKIRCH GMBH, f/k/a PAPIERFABRIK AUGUST KOEHLER SE, f/k/a PAPIERFABRIK AUGUST KOEHLER AG; and KOEHLER PAPER SE, <br><br> Defendants. | Before: Gary S. Katzmann, Judge <br> Court No. 24-00014 |

### OPINION AND ORDER

[ The court denies Defendants' Amended Motion to Certify Order for Immediate Appeal and Motion to Stay. ]

Dated: October 10, 2024

Luke Mathers, Trial Attorney, U.S. Department of Justice, New York, N.Y, for Plaintiff United States. With him on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Justin R. Miller, Attorney-in-Charge, International Trade Field Office, and Edward F. Kenny, Senior Trial Counsel. Of counsel were Sasha Khrebtukova, Attorney, and Brandon T. Rogers, Senior Attorney, Offices of the Assistant Chief Counsel, U.S. Customs and Border Protection, of New York, N.Y. and Indianapolis, IN.

John F. Wood, Holland & Knight LLP, of Washington, D.C., for Defendants Koehler Oberkirch GmbH and Koehler Paper SE. With him on the brief were Andrew McAllister, Anna P. Hayes, and Stuart G. Nash.

   Katzmann, Judge: The prologue to this litigation has so far unfolded in two parts. In the first part, the court issued an interlocutory order permitting service on foreign defendants through their U.S.-based counsel. Now, in the second, the court addresses whether that order is appealable without the entry of final judgment.

Plaintiff the United States ("the Government") initiated this action on January 24, 2024 in an effort to recover about $200 million in unpaid antidumping duties, including statutory interest, from Defendants Koehler Oberkirch GmbH ("Koehler GmbH") and Koehler Paper SE ("Koehler SE") (collectively, "Koehler" or "Defendants"), which comprise a German manufacturer of lightweight thermal paper.[1]  See Am. Compl., Feb 8, 2024, ECF No. 4; see also 28 U.S.C. § 1582(3).  In an Opinion and Order issued on August 21, 2024, the court granted the Government's motion for leave to effect alternative service on Koehler pursuant to USCIT Rule 4(e)(3).  See United States v. Koehler Oberkirch GmbH, 48 CIT __, Slip Op. No. 24-97 (Aug. 21, 2024) ("Alternative Service Order").  As authorized by that order, the Government served Koehler by delivering the Summons and Amended Complaint to Koehler's counsel in Washington, DC on August 22, 2024.  See Proof of Service, Aug. 27, 2024, ECF No. 27.

Koehler now moves to certify the Alternative Service Order for appeal to the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") pursuant to 28 U.S.C. § 1292(d)(1).  See Defs.' Mot to Certify Order for Immediate Appeal, Aug. 30, 2024, ECF No. 28; see also Defs.' Am. Mot to Certify Order for Immediate Appeal, Sept. 5, 2024, ECF No. 33 ("Mot. to Certify").  Koehler also moves to stay this case pending the outcome of the Motion to Certify and of any appeal that might ensue.  See Defs.' Mot. to Stay, Aug. 30, 2024, ECF No. 29.  The Government opposes Koehler's Motion to Certify.  See Pl.'s Resp. in Opp. to Defs.' Mot. to Certify, Sept. 10, 2024, ECF No. 34 ("Pl.'s Resp.").

---

[1] Thermal paper is paper that "form[s] an image when heat is applied," and is "typically (but not exclusively) used in point-of-sale applications such as ATM receipts, credit card receipts, gas pump receipts, and retail store receipts." Antidumping Duty Orders: Lightweight Thermal Paper from Germany and the People's Republic of China, 73 Fed. Reg. 70959, 70960 (Dep't Com. Nov. 24, 2008).

Koehler moved to file a permissive reply in further support of its Motion to Certify on September 24, 2024. See Defs.' Mot. for Leave to File Reply, Sept. 24, 2024, ECF No. 35. The court granted that motion, see Order, Sept. 26, 2024, ECF No. 36, and Koehler's reply—a "proposed" copy of which was appended to the motion for leave to file it—was deemed filed. See Defs.' Reply in Support of Mot. to Certify, Sept. 26, 2024, ECF No. 37 ("Defs.' Reply").

The court denies Koehler's Motion to Certify and Motion to Stay for the reasons explained below.

## BACKGROUND

The court assumes familiarity with the procedural history of this case as recounted in the Alternative Service Order.

The narrow issue now before the court is whether 28 U.S.C. § 1292(d)(1) permits certification of Koehler's appeal from the interlocutory Alternative Service Order. If it does not, a default rule applies which limits appellate review to final judgments of this court. See 28 U.S.C. §§ 1291, 1295(a)(5).

As relevant here, interlocutory appeal from an order of this court to the Federal Circuit is permitted in the following circumstance:

> [W]hen any judge of the Court of International Trade, in issuing any other interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

28 U.S.C. § 1292(d)(1). To be certified for interlocutory appeal, then, the Alternative Service Order must meet a pair of criteria. It must involve a "controlling question of law . . . with respect to which there is a substantial ground for difference of opinion," and it must be that immediate

appeal from the order "may materially advance the ultimate termination of the litigation." Id.; see also United States v. Kingshead Corp., 13 CIT 961, 962 (1989) ("Where a controlling question of law on which there is a substantial ground for difference of opinion is absent, or an interlocutory appeal will not materially advance the ultimate termination of litigation, the motion for certification must be denied."). In assessing the Alternative Service Order against these criteria,[2] the court bears in mind the "strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals." United States v. Nixon, 418 U.S. 683, 690 (1974).[3] Interlocutory appeal under 28 U.S.C. § 1292(d)(1) is warranted only in "exceptional cases where [it] may avoid protracted and expensive litigation."

---

[2] The wording of 28 U.S.C. § 1292(d)(1) is similar to that of the more frequently litigated subsection (b) of the same section, which provides for Court of Appeals review of an interlocutory order by a U.S. District Court:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Id. § 1292(b). In conducting the present analysis of § 1292(d)(1), the court looks to other courts' analyses of § 1292(b) as persuasive but non-binding authority. Cf. United States v. Zatkova, 35 CIT 1059, 1061 n.1, 791 F. Supp. 2d 1305, 1308 n.1 (2011) (analogously looking to "decisions and commentary" on the Federal Rules of Civil Procedure for "guidance" on the interpretation of identically-worded provisions of the Rules of the U.S. Court of International Trade).

[3] Two years earlier, the Supreme Court noted that "the expeditious termination of litigation in the district courts" is "the express purpose of [section] 1292(b)." Tidewater Oil Co. v. United States, 409 U.S. 151, 172 (1972).

United States v. Dantzler Lumber & Exp. Co., 17 CIT 178, 180 (1993) (quoting Milbert v. Bison Lab'ys, Inc., 260 F.2d 431, 433 (3d Cir. 1958)). As another court has observed, "[c]ommon sense teaches that, if employed in a casual or desultory fashion, interlocutory appeal may not only fail materially to advance the termination of a case but may prolong it. The cure prescribed by an overeager petitioner may well produce symptomatology far more virulent than any which would otherwise infect the record." Bank of New York v. Hoyt, 108 F.R.D. 184, 189 (D.R.I. 1985).

## DISCUSSION

Certification is not warranted here because interlocutory appeal from the Alternative Service Order would not "materially advance," and indeed would delay, "the ultimate termination of the litigation." 28 U.S.C. § 1292(d)(1). Because this is a necessary criterion, the court need not address the separate question of whether "a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion." Id.

As a starting point, the court accepts arguendo[4] the premise that Koehler "[has] not evaded service." Mot. to Certify at 1. If this is true, then reversal of the Alternative Service Order on appeal would not advance the litigation's termination. Koehler's assertion of non-evasion is an implicit concession that upon reversal, the Government would nevertheless eventually succeed in serving Koehler in some other way.[5] This in turns means that the Government's inability to serve Koehler specifically through its U.S. counsel would not terminate the litigation—it would instead

---

[4] The question of whether this premise is correct is not before the court.

[5] Koehler has also represented to the court that "[u]nder these circumstances, service on Defendants' U.S. counsel is unnecessary." Defs.' Resp. in Opp'n to Mot. for Alternative Service at 6, May 13, 2024, ECF No. 11. Such service could be "unnecessary" only on account of Koehler's acknowledgment of the Government's ability to eventually effect service through other means.

delay that termination by requiring the Government to serve a non-evasive Koehler through more time-consuming means. And as the court "must consider the extent to which time and expense will be saved by an interlocutory appeal if the order appealed is found to be in error," Kingshead, 13 CIT at 962, that consideration weighs heavily against appealability here.

Koehler cites Johnson v. Burken, 930 F.2d 1202, 1204 (7th Cir. 1991), for the proposition that denying certification of appealability would cause the court and the parties to "risk a greater loss of time and resources were the issue to be resolved in Koehler's favor on a post-judgment appeal." Mot. to Certify at 12. This citation is on-theme but does not support Koehler's position. Unlike the order at issue in Johnson, the Alternative Service Order here is not a denial of a (Federal) Rule 12(b)(5) motion to dismiss for insufficient service of process. See Johnson v. Burken, 727 F. Supp. 398, 398 (N.D. Ill. 1989), vacated, 930 F.2d 1202. Reversing such a denial of a motion to dismiss ends the case. See Johnson, 930 F.2d at 1206 ("If we don't decide the validity of the first service, the case may go through to judgment, followed by an appeal that will result (as we are about to see) in throwing the case out for want of proper service . . . ."). Hypothetical appellate reversal here, by contrast, would simply result in the Government's further attempts to serve Koehler—whether through email, letters rogatory, or some other means. This would necessarily entail delay. Any future service, taking place as it would in the future, would be more time-consuming than what the Government has already completed pursuant to the Alternative Service Order.

And that would not be all: any delay inherent in the Government's further attempts to serve Koehler would follow a potentially lengthy appeal process. The court finds compelling the

articulation of the same consideration by a different session of the U.S. Court of International Trade, which stated the following in denying a motion for certification of appealability:

> [L]itigating an interlocutory appeal may well delay the ultimate disposition of this action. Certifying . . . questions for interlocutory appeal creates the potential for multiple rounds of briefing and argument at the U.S. Court of Appeals for the Federal Circuit. Even if the Court of Appeals accepts the interlocutory appeal and reverses this Court's decision, many months, and perhaps more than a year would pass before the ultimate termination of the litigation. The court can envision a scenario where resolution on the substance of Plaintiff's complaint actually <u>precedes</u> the appellate decision on jurisdiction.

<u>Icdas Celik Enerji Tersane ve Ulasim Sanayi, A.S. v. United States</u>, 39 CIT 1648, 1649, 113 F. Supp. 3d 1316, 1318 (2015) (internal quotation marks, alterations, and citations omitted).[6]

Koehler also cites <u>Tidewater</u>, 409 U.S. at 171–72, for the proposition that "section 1292 review is suitable for threshold issues that do not require extensive record analysis." Defs.' Reply at 5. But <u>Tidewater</u>, too, is unavailing. The Supreme Court observed in that case that "questions that would be presented to the courts of appeals under [Section] 1292(b) would often involve threshold procedural issues not requiring extensive analysis of the record." 409 U.S. at 171–72. That observation does not establish a sufficient condition for appealability under section 1292(b) or (d)(1). Nor could it. Section 1292(d)(1), as explained above, lays out two necessary conditions for appealability that the judicial branch is powerless to relax: the interlocutory order from which the appeal is sought must involve a "controlling question of law . . . with respect to which there is a substantial ground for difference of opinion," and it must be that appeal from it "may materially

---

[6] Expressions of this concern are not confined to recent history. <u>See, e.g.</u>, <u>McLish v. Roff</u>, 141 U.S. 661, 665–66 (1891) ("From the very foundation of our judicial system the object and policy of the acts of congress in relation to appeals and writs of error . . . have been to save the expense and delays of repeated appeals in the same suit, and to have the whole case and every matter in controversy in it decided in a single appeal.").

advance the ultimate termination of the litigation." Id. In describing a characteristic typical of interlocutory orders that satisfy the standard for certification, the Court did not replace the standard itself with a general-purpose "suitability" metric. See Tidewater, 409 U.S. at 171–72.

Koehler finally contends that "because service (and, in turn, personal jurisdiction) is a threshold issue, it is prudent to have the Federal Circuit resolve the question now." Mot. to Certify at 12. "[T]he error at issue," Koehler adds in its reply, "concerns fundamental rights." Defs.' Reply at 4.[7] But while is true in a general sense that "service" is a threshold issue, see generally USCIT R. 4, "service" as such is not the issue that the Federal Circuit would address in a hypothetical interlocutory appeal from the Alternative Service Order. The issue would be a humbler one: the proper selection of a means of service from a menu of conceivable options.[8] Its resolution in Koehler's favor on appeal, moreover, would not halt the Government at the threshold of litigation. It would merely require the Government to step over it in a different way. All told,

---

[7] Although this statement seems like a direct attribution of error, the court takes it to refer to a hypothetical finding of error by the Federal Circuit.

[8] Koehler points to the non-precedential case of Cardiac Pacemakers, Inc. v. St. Jude Med. Inc., 144 F. App'x 106 (Fed. Cir. 2005) as an example of an interlocutory appeal under 28 U.S.C. § 1292(b) that the Federal Circuit took to resolve an issue that "did not involve constitutional or jurisdictional concerns," and whose resolution would not "result in an end to the case." Defs.' Reply at 4. But while the resolution of the issue in Cardiac Pacemakers—the proper assignment of a case to a district court judge on remand—of course did not directly end the litigation, it is easy to see how it could have at least "materially advance[d]" its "ultimate termination". 28 U.S.C. § 1292(d)(1). The Federal Circuit explained that "[i]n view of the familiarity of the district court with this eight-year old, multi-patent case and no allegation of bias by any party, we conclude that the case should not be assigned to another judge." Cardiac Pacemakers, 144 F. App'x at 107. Assignment to a judge who is familiar with a years-long case at the very least "may" result in more expeditious litigation than assignment to a different judge who must endeavor to familiarize herself. 28 U.S.C. § 1292(d)(1). But the same cannot be said of a hypothetical appellate order in this case that would require the Government to re-complete service in a more time-consuming fashion.

Court No. 24-00014 Page 9

this case does not involve "the ingredients reasonably necessary to catalyze the special alchemy of intermediate review." Hoyt, 108 F.R.D. at 190.

Finally, because certification for immediate appeal is unwarranted, Defendants' request for a stay pending such an appeal is moot.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' Amended Motion to Certify Order for Immediate Appeal, Sept. 5, 2024, ECF No. 33, is **DENIED** with prejudice; and it is further

**ORDERED** that Defendants' Motion to Stay, Aug. 30, 2024, ECF No. 29, is **DENIED** as moot.

/s/     *Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: October 10, 2024
       New York, New York