UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: GARY S. KATZMANN, JUDGE

| | |
|---|---|
| UNITED STATES, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : Court No. 24-00014 |
| KOEHLER OBERKIRCH GMBH, f/k/a | : |
| PAPIERFABRIK AUGUST KOEHLER | : |
| SE, f/k/a PAPIERFABRIK AUGUST | : |
| KOEHLER AG; and KOEHLER PAPER | : |
| SE, | : |
| | : |
| Defendants. | : |
| | : |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

EDWARD F. KENNY
Senior Trial Counsel

Of Counsel:
BRANDON T. ROGERS
Senior Attorney
U.S. Customs and Border Protection
Office of the Assistant Chief Counsel
8899 E. 56th Street
Indianapolis, Indiana 46249

Dated: November 27, 2024

LUKE MATHERS
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Suite 346
New York, New York 10278
Tel.: (212) 264-9236
*Attorneys for Plaintiff*

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

    I.    Koehler Oberkirch Dumps Thermal Paper On The U.S. Market, Conceals Information From The U.S. Department Of Commerce Through A Transshipment Scheme, Refuses To Pay Its Antidumping Duty Bills, Then Spins Off Its Substantial Assets To Koehler Paper To Evade Liability ............................................................................................................................. 2

    II.    Before Resisting The Court's Authority In This Case, Koehler Paper Avails Itself Of This Court As A Plaintiff In A Related Action ...................................................................... 4

ARGUMENT .......................................................................................................................... 6

    I.    Personal Jurisdiction Over Koehler Oberkirch Is Imputed To Koehler Paper As A Successor-In-Interest ................................................................................................................ 6

    II.    Additionally, Koehler Paper Has Consented To This Court's Jurisdiction By Bringing A Related Action In This Court ...................................................................................... 11

CONCLUSION ...................................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adam v. Saenger*,
  303 U.S. 59 (1938) ................................................................................................. 11

*Apple Inc. v. Zipit Wireless, Inc.*,
  30 F.4th 1368 (Fed. Cir. 2022) .............................................................................. 2

*Att'y Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*,
  268 F.3d 103 (2d Cir. 2001) ................................................................................... 9

*Bel-Ray Co. v. Chemrite (Pty) Ltd.*,
  181 F.3d 435 (3d Cir. 1999) ........................................................................... 11, 12

*Clark v. Taylor*,
  627 F.2d 284 (D.C. Cir. 1980) ................................................................................ 4

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .............................................................................................. 11

*Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*,
  297 F.3d 1343 (Fed. Cir. 2002) .............................................................................. 7

*Elecs. For Imaging, Inc. v. Coyle*,
  340 F.3d 1344 (Fed. Cir. 2003) .............................................................................. 7

*Est. of Mechling v. U.S. Bank Nat'l Ass'n*,
  2024 WL 404539 (D. Conn. Feb. 2, 2024) ........................................................... 12

*Est. of Thomson ex rel. Est. of Rakestraw v. Toyota Motor Corp. Worldwide*,
  545 F.3d 357 (6th Cir. 2008) .................................................................................. 8

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021) .............................................................................................. 12

*Foster Wheeler Energy Corp. v. Metallgesellschaft AG*,
  1993 WL 669447 (D. Del. Jan. 4, 1993) .............................................................. 12

*Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*,
  292 F.3d 1363 (Fed. Cir. 2002) ............................................................................ 11

*Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*,
  940 F.2d 20 (1st Cir. 1991) ............................................................................. 11, 12

*Hawkins v. i-TV Digitalis Tavkozlesi zrt.*,
  935 F.3d 211 (4th Cir. 2019) .................................................................................. 8

iii

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ................................................................................ 2, 7

*Lelchook v. Société Générale de Banque au Liban SAL*,
   239 N.E.3d 172 (N.Y. 2024) ......................................................................... 9

*Lelchook v. Société Générale de Banque au Liban SAL*,
   67 F.4th 69 (2d Cir. 2023) ............................................................................ 9

*Matra Americas, LLC v. United States*,
   681 F. Supp. 3d 1339 (Ct. Int'l Trade 2024) ............................................ 2, 5

*Milliken v. Meyer*,
   311 U.S. 457 (1940) ...................................................................................... 2

*Minnesota Min. & Mfg. Co. v. Eco Chem, Inc.*,
   757 F.2d 1256 (Fed. Cir. 1985) ............................................................... 9, 10

*Patin v. Thoroughbred Power Boats Inc.*,
   294 F.3d 640 (5th Cir. 2002) ........................................................................ 8

*Promptu Sys. Corp. v. Comcast Cable Commc'ns, LLC*,
   92 F.4th 1384 (Fed. Cir. 2024) ..................................................................... 6

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
   338 F.3d 773 (7th Cir. 2003) .................................................................. 8, 10

*S.E.C. v. Gastauer*,
   93 F.4th 1 (1st Cir. 2024) ..................................................................... 10, 11

*San Francisco v. Purdue Pharma L.P.*,
   491 F. Supp. 3d 610 (N.D. Cal. 2020).......................................................... 9

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*,
   672 F.3d 1041 (Fed. Cir. 2012) .................................................................... 3

*Sosa v. Alvarez-Machain*,
   542 U.S. 692 (2004) ...................................................................................... 6

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*,
   563 F.3d 1285 (Fed. Cir. 2009) ................................................................ 6, 7

*U.S. Bank Nat'l Assoc. v. Bank of Am. N.A.*,
   916 F.3d 143 (2d Cir. 2019) ......................................................................... 9

*United States v. Islip*,
   18 F. Supp. 2d 1047 (Ct. Int'l Trade 1998) ................................................. 8

*United States v. Koehler Oberkirch GmbH,*
  2024 WL 3887285 (Ct. Int'l Trade Aug. 21, 2024) ................................................. 4

*United States v. Koehler Oberkirch GmbH,*
  2024 WL 4457468 (Ct. Int'l Trade Oct. 10, 2024) ................................................ 4

*Williams v. Bowman Livestock Equip. Co.,*
  927 F.2d 1128 (10th Cir. 1991) ............................................................................ 8

**Statutes**

19 U.S.C. § 1637d(a)(3) .............................................................................................. 5

28 U.S.C. § 1582(3) .................................................................................................... 9

**Rules**

Fed. R. Civ. P. 12(b)(2) .............................................................................................. 2

Fed. R. Civ. P. 25(c) ................................................................................................... 9

Fed. R. Civ. P. 4(k)(2) ............................................................................................ 6, 7

USCIT Rule 12(b)(2) .................................................................................................. 6

USCIT Rule 12(b)(5) .................................................................................................. 6

USCIT Rule 12(h)(1)(A) ............................................................................................. 8

USCIT Rule 4(j)(2) .................................................................................................. 6, 7

**Other Authorities**

7C Charles A. Wright *et al.*,
  *Federal Practice and Procedure* § 1958 (3d ed. 2024) ........................................ 9

Mem. from J. Maeder to C. Marsh, re: Issues and Decision Memorandum for the Final
  Affirmative Determination of Sales at Less than Fair Value in the Antidumping Duty
  Investigation of Thermal Paper from Germany (Dep't Com. Sept. 24, 2021) .......... 5

*Thermal Paper from Germany: Final Affirmative Determination of Sales at Less than Fair Value
  and Final Affirmative Determination of Critical Circumstances, in Part,*
  86 Fed. Reg. 54,152 (Dep't Com. Sept. 30, 2021) ................................................ 4

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: GARY S. KATZMANN, JUDGE

_____

|                                                          |     |                       |
|----------------------------------------------------------|-----|-----------------------|
| UNITED STATES,                                           | :   |                       |
|                                                          | :   |                       |
| Plaintiff,                                               | :   |                       |
|                                                          | :   |                       |
| v.                                                       | :   |                       |
|                                                          | :   | Court No. 24-00014    |
| KOEHLER OBERKIRCH GMBH, f/k/a                            | :   |                       |
| PAPIERFABRIK AUGUST KOEHLER                              | :   |                       |
| SE, f/k/a PAPIERFABRIK AUGUST                            | :   |                       |
| KOEHLER AG; and KOEHLER PAPER                            | :   |                       |
| SE,                                                      | :   |                       |
|                                                          | :   |                       |
| Defendants.                                              | :   |                       |

_____:

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

Plaintiff, the United States (the Government), respectfully submits this response in opposition to the motion to dismiss, ECF No. 43 ("Mot. to Dismiss"), of defendants Koehler Oberkirch GmbH (Koehler Oberkirch) and Koehler Paper SE (Koehler Paper).

**INTRODUCTION**

The defendants do not dispute that, service-of-process arguments aside, this Court has specific personal jurisdiction over Koehler Oberkirch—the mere continuation of an importer that acquired a nearly $200 million duty debt (over $250 million now, accounting for interest) when dumping thermal paper on the U.S. market. And the defendants do not question that the Government's allegations, taken as true, establish that Koehler Oberkirch's "spin-off" to Koehler Paper was done to escape paying U.S. Customs and Border Protection (Customs), deeming Koehler Paper likewise liable as Koehler Oberkirch's successor-in-interest. *See* ECF No. 4 (Am. Compl.).

That resolves the defendants' motion to dismiss.  Because personal jurisdiction is imputed from a company to its successor, this Court has personal jurisdiction over Koehler Paper.  In other words, it does not offend "traditional notions of fair play and substantial justice," *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)), to hale to this Court a company created to avoid paying the very duties imposed on its predecessor and upheld by this Court.

Nor is it unfair to subject a party to a court's authority as a defendant when it has invoked that same court's authority as a plaintiff in a related action.  Koehler Paper brought an action against the United States in this Court to challenge antidumping duties imposed on entries of its predecessor's thermal paper.  *See Matra Americas, LLC v. United States*, 681 F. Supp. 3d 1339 (Ct. Int'l Trade 2024).  By bringing a suit related to this one—involving the same parties and subject matter—Koehler Paper has consented to this Court's personal jurisdiction and cannot now claim that the Court is powerless over it.

For either of these reasons, the Court should deny the defendants' motion.

## BACKGROUND

I.    **Koehler Oberkirch Dumps Thermal Paper On The U.S. Market, Conceals Information From The U.S. Department Of Commerce Through A Transshipment Scheme, Refuses To Pay Its Antidumping Duty Bills, Then Spins Off Its Substantial Assets To Koehler Paper To Evade Liability**

The operative complaint's factual allegations must be accepted as true.  *See Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1374 (Fed. Cir. 2022) (analyzing a Fed. R. Civ. P. 12(b)(2) motion to dismiss).  Koehler Oberkirch—known as Papierfabrik August Koehler SE before November 2021 and as Papierfabrik August Koehler AG before 2012—is a German manufacturer of thermal paper that, for a time, served as the nonresident importer of record for entries of its own products into the United States.  Am. Compl. at ¶¶ 3–9.  Entries of Koehler

Oberkirch's thermal paper were subject to an antidumping duty order imposed by the United States Department of Commerce.  *Id.* at ¶ 10.

"Dumping occurs when a foreign company sells a product in the United States at a lower price than what it sells that same product for in its home market."  *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1046 (Fed. Cir. 2012).  Foreign companies can undercut domestic ones (and, in turn, capture market share) by dumping goods in the United States.  *Id.*  Congress empowered Commerce to offset dumping by imposing antidumping duties on underpriced imported goods.  *Id.* at 1046–47.  Determining the price of an imported good in the foreign company's home market is therefore essential to calculating an antidumping duty rate.

But Koehler Oberkirch hid the true price of its thermal paper in its home market.  It admittedly engaged in a transshipment scheme through which it concealed reportable home market sales transactions.  Am. Compl. at ¶¶ 13–14.  In the end, using adverse facts available, Commerce imposed antidumping duties at the rate of 75.36 percent *ad valorem* on Koehler Oberkirch's imports of thermal paper to protect domestic industry.  *Id.* at ¶ 15.  Both this Court and the United States Court of Appeals for the Federal Circuit upheld the 75.36 percent rate.  *Id.* at ¶¶ 16–17.

Rather than pay the resulting duty bills, Koehler Oberkirch took other evasive action.  It understated its debts to Customs in its financial statements and, shortly after those debts became final and conclusive by law, siphoned away most of its assets (but few of its liabilities) to Koehler Paper—a newly formed parent company with the same address and management— leaving Koehler Oberkirch undercapitalized.  *Id.* at ¶¶ 29–39, 42, 50.  Put simply, the "spin-off" to Koehler Paper was done to avoid paying Customs—by far Koehler Oberkirch's largest creditor at the time—making Koehler Paper a successor-in-interest to Koehler Oberkirch.

The Government brought suit to collect earlier this year.  *See* ECF No. 1.  The summons

and operative complaint were eventually served on the defendants through their U.S. counsel of

record, pursuant to the Court's alternative service order, *United States v. Koehler Oberkirch*

*GmbH*, 2024 WL 3887285 (Ct. Int'l Trade Aug. 21, 2024).  ECF No. 27 (proof of service).  The

Court denied the defendants' bid for interlocutory review of that order.  *United States v. Koehler*

*Oberkirch GmbH*, 2024 WL 4457468 (Ct. Int'l Trade Oct. 10, 2024).[1]

## II.     Before Resisting The Court's Authority In This Case, Koehler Paper Avails Itself Of This Court As A Plaintiff In A Related Action

But before the Government brought suit, before the defendants refused to waive service,

and before Koehler Paper moved to dismiss for lack of personal jurisdiction, Koehler Paper (as

"the successor-in-interest to Koehler Oberkirch GmbH (formerly known as Papierfabrik August

Koehler SE)") sued the United States to challenge Commerce's 2021 "final determination … in

the anti-dumping investigation of thermal paper from Germany, and Commerce's issuance of an

antidumping duty order."  *Koehler Paper SE v. United States*, Court No. 21-00633, ECF No. 1 at

1 (Dec. 22, 2021).  Commerce's investigation covered the defendants' predecessor's dumping of

thermal paper between October 1, 2019 and September 30, 2020.  *Thermal Paper from*

*Germany: Final Affirmative Determination of Sales at Less than Fair Value and Final*

*Affirmative Determination of Critical Circumstances, in Part*, 86 Fed. Reg. 54,152 (Dep't Com.

Sept. 30, 2021).  In its final determination, Commerce addressed, among other issues, the

---

[1] The defendants have since petitioned the U.S. Court of Appeals for the Federal Circuit for a writ of mandamus, *see* ECF No. 45, arguing that this Court's order had "no legal basis" and was a "clear abuse of discretion."  Petition at 2, *In re Koehler Oberkirch GmbH*, No. 25-106 (Fed. Cir. Oct. 30, 2024).  The Federal Circuit's consideration of the now fully briefed petition has no effect on these proceedings.  *See, e.g.*, *Clark v. Taylor*, 627 F.2d 284, 288 (D.C. Cir. 1980) ("[T]he trial court had not lost its jurisdiction because the appellate court was entertaining an application for writ of mandamus.").

existence of "critical circumstances" and "whether to make an adjustment for interest on unpaid antidumping duties."  Mem. from J. Maeder to C. Marsh, re: Issues and Decision Memorandum for the Final Affirmative Determination of Sales at Less than Fair Value in the Antidumping Duty Investigation of Thermal Paper from Germany ("IDM"), at 1 (Dep't Com. Sept. 24, 2021).

As to "critical circumstances" (which exist where a company has a "history" of dumping "the subject merchandise," 19 U.S.C. § 1637d(a)(3)), Commerce rejected the defendants' arguments that the original antidumping order that resulted in the duties at issue in this case covered different products.  IDM at 8–12.  The "scope of this investigation," Commerce explained, "covers the entirety of the merchandise subject to that order."  *Id.* at 11.

And as for the issue of interest accruing on unpaid antidumping duties, Commerce explained that "CBP has assessed interest on the outstanding AD liability"—that is, the duties at stake in this case—"some of which accrued during the [period of investigation]."  *Id.* at 19.  Commerce then accounted for this interest—the same interest that the Government seeks to recover in this case—contrary to how the domestic industry argued it should.  *See id.* at 16–19.

Koehler Paper's action in this Court challenging Commerce's final determination was consolidated under *Matra Americas, LLC v. United States*, Court No. 21-00632.  *Koehler Paper SE v. United States*, Court No. 21-00633, ECF No. 33 (Apr. 1, 2022).  The Court ultimately remanded to Commerce to, among other things, reassess how to account for the interest accruing on the duties that are the subject of this case.  *Matra Americas, LLC v. United States*, 681 F. Supp. 3d 1339, 1380–82 (Ct. Int'l Trade 2024).

Despite enjoying the benefits of this Court's jurisdiction as a plaintiff, Koehler Paper now moves to dismiss the operative complaint under USCIT Rule 12(b)(2) for lack of personal jurisdiction.  *See generally* Mot. to Dismiss.[2]

## ARGUMENT

This Court has personal jurisdiction over Koehler Paper for two independent reasons. First, as a successor-in-interest to Koehler Oberkirch—a party over which the defendants effectively concede this Court has personal jurisdiction—Koehler Paper is likewise subject to this Court's personal jurisdiction.  Were the law otherwise, importers could evade this Court simply by transferring assets to companies they create overseas.

Second, Koehler Paper has consented to this Court's jurisdiction by bringing before it a related suit concerning antidumping duties imposed on its predecessor's thermal paper.  Koehler Paper cannot have it both ways: it cannot invoke this Court's jurisdiction to attack antidumping duties and subsequently claim that this Court lacks the power to order it to pay antidumping duties.

## I.    Personal Jurisdiction Over Koehler Oberkirch Is Imputed To Koehler Paper As A Successor-In-Interest

USCIT Rule 4(j)(2) (analogous to Fed. R. Civ. P. 4(k)(2)) "is the starting point for any personal jurisdictional analysis in" this Court.  *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293 (Fed. Cir. 2009).  That Rule provides that when a claim

---

[2] The defendants also move to dismiss the complaint for insufficient service of process under USCIT Rule 12(b)(5) on the same grounds that they unsuccessfully opposed alternative service, "as a matter of precaution and to avoid any appearance of waiver of this defense."  Mot. to Dismiss at 2–3.  But parties do not preserve arguments by "incorporat[ing] by reference their prior arguments" spread across other filings, *id.* at 2.  *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 n.24 (2004); *Promptu Sys. Corp. v. Comcast Cable Commc'ns, LLC*, 92 F.4th 1384 (Fed. Cir. 2024) (per curiam).  Regardless, because the Court has already rejected the defendants' arguments, and because the Government served the defendants in accordance with the Court's order, the Court should deny the defendants' motion on this point.

"arises under federal law, serving a summons … establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any of the state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."  USCIT Rule 4(j)(2).  Here, there is no dispute that Koehler Paper currently is not subject to any state court's jurisdiction.  The only question is whether this Court's exercising personal jurisdiction over Koehler Paper is consistent with Fifth Amendment due process.  *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1350 (Fed. Cir. 2002) ("Because this is a federal question case, the due process requirements of the Fifth Amendment are at issue.").

The "standard articulated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny" applies to this question, even though "it was developed in the context of the due process clause of the Fourteenth Amendment."  *Id.*  Under this standard, "the exercise of jurisdiction over nonresident defendants … is not inconsistent with due process if the nonresident defendants have certain 'minimum contacts' with the forum"—here, the United States as a whole—"'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003) (quoting *Int'l Shoe*, 326 U.S. at 316); *see Synthes (U.S.A.)*, 563 F.3d at 1295 ("The third requirement under [Fed. R. Civ. P.] 4(k)(2)—the due process analysis—contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits.").

While the analysis regarding personal jurisdiction can be complicated, the defendants have made it easy in this case.  Koehler Paper does not dispute that Koehler Oberkirch has sufficient minimum contacts with the United States such that the Court may constitutionally

exercise jurisdiction over it.  Mot. to Dismiss at 3–5.[3]  Nor does Koehler Paper dispute that the Government's allegations, accepted as true, establish that Koehler Oberkirch's "spin-off" to Koehler Paper deems it a successor-in-interest to Koehler Oberkirch under federal common law.  *See generally id.*[4]

Those two points, put together, are fatal to Koehler Paper's argument that this Court lacks personal jurisdiction over it.  "[T]he jurisdictional contacts of a predecessor corporation may be imputed to its successor corporation without offending due process."  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003); *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 227 (4th Cir. 2019) ("[W]here one corporation has succeeded to another's liabilities, the predecessor corporation's forum contacts can be imputed to the successor corporation."); *Est. of Thomson ex rel. Est. of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008); *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) ("[I]t is compatible with due process for a court to exercise personal jurisdiction over … a corporation that would not ordinarily be subject to personal jurisdiction in that court when the … corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court."); *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1131 (10th Cir. 1991) ("A corporation's contacts with a forum may be imputed to its successor if

---

[3] Nor could it.  By moving to dismiss solely on service-related grounds, Koehler Oberkirch has waived any non-service-related personal-jurisdiction objections.  *See* USCIT Rule 12(h)(1)(A).  Moreover, as this Court has explained in a similar context, "[i]t is not unreasonable for an individual who sends products into the United States and who deals with U.S. Customs on a regular basis to expect to defend in the United States a suit involving alleged violations of United States customs laws."  *United States v. Islip*, 18 F. Supp. 2d 1047, 1062 (Ct. Int'l Trade 1998).

[4] In fact, Koehler Paper admits that it "is the successor-in-interest to Koehler Oberkirch GmbH (formerly known as Papierfabrik August Koehler SE)."  *Koehler Paper SE v. United States*, Court No. 21-00633, ECF No. 1 at 1 (Dec. 22, 2021).

forum law would hold the successor liable for the actions of its predecessor."); *see Minnesota Min. & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1262–63 (Fed. Cir. 1985).[5]  Accordingly, exercising personal jurisdiction over Koehler Paper, a successor-in-interest to a party doubtless subject to this Court's personal jurisdiction, does not offend due process.[6]

Indeed, "[w]ere this not so," a company "could merely transfer legal ownership of [its] assets from one shell corporation to another in a different jurisdiction, putting a party whose initial suit satisfied the jurisdictional requirements to the immense burden of chasing the involved assets from courtroom to courtroom." *Minnesota Min. & Mfg. Co.*, 757 F.2d at 1263. This rationale for asserting personal jurisdiction over a successor-in-interest applies with even more force here.  Under Federal law, the Government's sole forum for obtaining a judgment for unpaid customs duties is this Court, *see* 28 U.S.C. § 1582(3); under international law, the so-called "revenue rule" prohibits the Government from suing in the courts of a foreign sovereign to collect customs duties, *Att'y Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 109–110 (2d Cir. 2001).  In other words, if this Court does not have the power to order

---

[5] *Minnesota Mining & Manufacturing* concerned Fed. R. Civ. P. 25(c), which permits the substitution or joinder of an entity that became a party's successor-in-interest after commencement of a suit.  7C Charles A. Wright *et al.*, *Federal Practice and Procedure* § 1958 (3d ed. 2024).  Its reasoning that personal jurisdiction carries over from a predecessor company to its successor was not premised on or limited to the rule's language.  *See Minnesota Min. & Mfg. Co.*, 757 F.2d at 1263.

[6] The states may, however, place substantive limits on the imputation of jurisdictional contacts.  Under New York law, for example, the jurisdictional contacts of a predecessor may not always impute to a successor that merely purchases significant assets.  *See U.S. Bank Nat'l Assoc. v. Bank of Am. N.A.*, 916 F.3d 143, 156 (2d Cir. 2019) (dicta).  *But see Lelchook v. Société Générale de Banque au Liban SAL*, 239 N.E.3d 172, 178–79 (N.Y. 2024).  It is unclear how such a purchaser would constitute a successor in the first place.  Regardless, even if federal common law ought to track New York law—instead of, say, California law, under which jurisdictional contacts are imputed to successors regardless of the basis for successor liability, *San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 644 (N.D. Cal. 2020)—"successor jurisdiction lies" if there is "fraud."  *Lelchook v. Société Générale de Banque au Liban SAL*, 67 F.4th 69, 79 (2d Cir. 2023).  The defendants offer no reason why federal common law should be different.

Koehler Paper to pay the antidumping duties at the rate that this Court has already confirmed is lawfully owed for its predecessor's entries, then the defendants will escape judgment.

Koehler Paper does not address any of these points in its motion.  *See* Mot. to Dismiss at 3–5.  While it may attempt in its reply brief to draw analogies to *S.E.C. v. Gastauer*, 93 F.4th 1 (1st Cir. 2024), that case is distinguishable and in fact supports the Government's position.

In *Gastauer*, the Securities and Exchange Commission named Gastauer, a German individual, as a "relief defendant" in a securities-fraud case.  93 F.4th at 5.  Gastauer was "not accused of any wrongdoing"; rather, his "only involvement in the case" was "his receipt of a unilateral transfer of money from a third party" that, unbeknownst to him, constituted the "proceeds" of an "illegal scheme."  *Id.* at 5, 12.  On appeal, Gastauer successfully argued that the district court lacked personal jurisdiction over him.  *Id.* at 8–13.  The First Circuit distinguished Gastauer's situation—where an individual with no U.S. contacts was a mere recipient of ill-gotten gains—from cases where, consistent with due process, "jurisdictional contacts of one person or entity are imputed to another deemed to be a 'successor-in-interest.'"  *Id.* at 11 (citing *Minnesota Min. & Mfg. Co.*, 757 F.2d at 1263).  In those latter cases, the successor "has quite entirely stepped into its predecessor's shoes, such as by a corporate merger."  *Id.*

*Gastauer*'s reasoning thus supports the Court's exercise of personal jurisdiction over Koehler Paper.  Far from being a mere recipient of funds, Koehler Paper was created by its predecessor to avoid its debt to Customs.  It was reasonably foreseeable to all involved in that "spin-off" that their actions would require them to respond to the Government in this Court—the same forum where their predecessor unsuccessfully challenged the duty rate leading to that debt.  *See, e.g., Purdue Research Found.*, 338 F.3d at 784 ("In the corporate successor context, the successor corporation has chosen to stand in the shoes of its predecessor and has chosen to

accept the business expectations of those who have dealt previously with that predecessor. Therefore, it can be expected to be haled into the same courts as its predecessor.").  Because Koehler Paper is a knowing successor-in-interest rather than an unwitting recipient of assets, exercising jurisdiction over it would not offend due process or represent an "uninhibited approach to personal jurisdiction" that might impair "international rapport." *Gastauer*, 93 F.4th at 11, 13 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 141 (2014)).[7]  For this reason, the Court should deny Koehler Paper's motion to dismiss.

## II.    Additionally, Koehler Paper Has Consented To This Court's Jurisdiction By Bringing A Related Action In This Court

This Court may also exercise personal jurisdiction over Koehler Paper for another, independent reason:  Koehler Paper has consented to this Court's jurisdiction by invoking it as a plaintiff in a related action.

When a plaintiff has, "by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence.  It is the price which the state may exact as the condition of opening its courts to the plaintiff." *Adam v. Saenger*, 303 U.S. 59, 67–68 (1938).  Koehler Paper must pay that "price" within the Federal Circuit, too, so long as there is relation between its suit and this one.  *Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363, 1372 (Fed. Cir. 2002) (citing *Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 23–24 (1st Cir. 1991)); *accord Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443 (3d Cir. 1999) ("[W]here a

---

[7] The *Gastauer* court was also unpersuaded by the Securities and Exchange Commission's concern that "it would be more difficult … to pursue a claim against Gastauer abroad."  93 F.4th at 9.  As explained above, due to the "revenue rule," pursuing a claim against Koehler Paper abroad would be impossible, not just difficult.

party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter.").

Here, both suits arise from "the same subject matter." *Bel-Ray Co.*, 181 F.3d at 443. Both Koehler Paper's suit and this one involve the same Court, the same parties, the same product, the same unfair trade practice, and even the same interest that is accruing on the unpaid duty bills. And though it is true that the two cases involve separate antidumping duty orders covering separate time periods, only a "logical relationship" between the two cases is necessary—that is, overlap of fact and law. *Foster Wheeler Energy Corp. v. Metallgesellschaft AG*, 1993 WL 669447, at *3–*4 (D. Del. Jan. 4, 1993) (rejecting the defendants' argument that their action brought in the same court was "independent and separate" simply because it arose from a different transaction); *see Est. of Mechling v. U.S. Bank Nat'l Ass'n*, 2024 WL 404539, at *11 & n.4 (D. Conn. Feb. 2, 2024) (collecting cases). Because such overlap exists here, "it would defy logic and basic standards of fairness to allow" Koehler Paper "to enjoy the full benefits of access to [this Court] *qua* plaintiff, while nonetheless retaining immunity from [this Court's] authority *qua* defendant in respect to claims by the very party it was suing …." *Foster Wheeler Energy Corp.*, 1993 WL 669447, at *3 (quoting *Gen. Contracting & Trading Co.*, 940 F.2d at 23–24).

Due process protects a defendant's reasonable expectations, *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 363–64 (2021), not its chutzpah. Because Koehler Paper availed itself of this Court as a plaintiff in a suit related to this one, it cannot now claim that the Court lacks personal jurisdiction over it.

One final note: the defendants have also moved for oral argument on their motion to dismiss. ECF No. 44. The Government does not believe that oral argument is warranted, but nevertheless defers to the Court as to whether an oral argument would be helpful.

## <u>CONCLUSION</u>

Whether as a successor-in-interest to a party over which the Court has personal jurisdiction, or as a party that consented to the Court's personal jurisdiction by filing a related suit, this Court's exercise of personal jurisdiction over Koehler Paper is consistent with due process. For these reasons, the Court should deny the defendants' motion to dismiss.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Edward F. Kenny
EDWARD F. KENNY
Senior Trial Counsel

Of Counsel:
BRANDON T. ROGERS
Senior Attorney
U.S. Customs and Border Protection
Office of the Assistant Chief Counsel
8899 E. 56th Street
Indianapolis, Indiana 46249

Dated: November 27, 2024

/s/ Luke Mathers
LUKE MATHERS
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Suite 346
New York, New York 10278
Tel.: (212) 264-9236
*Attorneys for Plaintiff*

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: GARY S. KATZMANN, JUDGE

| | | |
|---|---|---|
| UNITED STATES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Court No. 24-00014 |
| KOEHLER OBERKIRCH GMBH, f/k/a | : | |
| PAPIERFABRIK AUGUST KOEHLER | : | |
| SE, f/k/a PAPIERFABRIK AUGUST | : | |
| KOEHLER AG; and KOEHLER PAPER | : | |
| SE, | : | |
| | : | |
| Defendants. | : | |

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Luke Mathers, a trial attorney in the Department of Justice, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing brief, relying upon the word count feature of the word processing program used to prepare the brief, certify that this brief complies with the word count limitation under the Court's chambers procedures, and contains 4,000 words.

/s/ Luke Mathers
LUKE MATHERS