THE UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| UNITED STATES, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | Case No. 24-00014 |
| KOEHLER OBERKIRCH GMBH, f/k/a | : | Judge Gary S. Katzmann |
| PAPIERFABRIK AUGUST KOEHLER SE, | : | |
| f/k/a PAPIERFABRIK AUGUST | : | |
| KOEHLER AG; and KOEHLER PAPER | : | |
| SE, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

Date: April 15, 2026

John F. Wood
Andrew McAllister
Anna P. Hayes
Stuart G. Nash *(admission pending)*
HOLLAND & KNIGHT, LLP
800 17th Street N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 469-5628
Andrew.McAllister@hklaw.com
Anna.Hayes@hklaw.com
John.F.Wood@hklaw.com
Stuart.Nash@hklaw.com

*Counsel for Defendants*

i

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .................................................................................................1

II.   BACKGROUND ..................................................................................................1

III.  ARGUMENT.......................................................................................................2

    A.    THERE REMAINS NO PERSONAL JURISDICTION OVER DEFENDANTS. ...............................2

    B.    THE GOVERNMENT IS PRECLUDED FROM SEEKING INJUNCTIVE RELIEF THROUGH
        DEFAULT JUDGMENT BECAUSE IT DID NOT SEEK SUCH RELIEF IN ITS COMPLAINT.........3

    C.    THIS COURT LACKS AUTHORITY TO ISSUE THE GOVERNMENT'S REQUESTED
        INJUNCTION. .................................................................................................6

        1.    The Requested Injunction Is Not Authorized by Statute. ...........................................7

        2.    The Court's Equitable Powers Do Not Encompass this Unprecedented
            Injunctive Relief..........................................................................................11

    D.    THE GOVERNMENT CANNOT SATISFY THE FACTORS NECESSARY FOR A PERMANENT
        INJUNCTION. .................................................................................................14

        1.    Irreparable Harm.........................................................................................15

        2.    Remedies Available at Law. .........................................................................17

        3.    Balance of Hardships. ..................................................................................18

        4.    The Public Interest. .....................................................................................18

    E.    THERE IS NO BASIS FOR APPLYING AN INJUNCTION TO THIRD PARTIES OR
        ENJOINING GOODS OTHER THAN LIGHTWEIGHT THERMAL PAPER. ...............................19

IV.   CONCLUSION...................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.X.M.S. Corp. v. Friedman*,
   948 F. Supp. 2d 319 (S.D.N.Y. 2013)......................................................................................16

*Ahava (USA), Inc. v. J.W.G., Ltd.*,
   250 F. Supp. 2d 366 (S.D.N.Y. 2003).......................................................................................8

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   809 F.3d 633 (Fed. Cir. 2015) (Reyna, J., concurring)...........................................................16

*Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. KEC Installations Inc.*,
   No. 1:14-cv-1126, 2015 WL 3444834 (E.D. Va. May 28, 2015)..........................................4, 5

*Beck v. Test Masters Educ. Servs.*,
   937 F. Supp. 2d 85 (D.D.C. 2013) ..........................................................................................15

*Brice v. Mezzano Condo. Ass'n*,
   No. 14-CV-81008, 2015 WL 10857399 (S.D. Fla. Apr. 10, 2015) ...........................................5

*C.D.S., Inc. v. Zetler*,
   217 F. Supp. 3d 713 (S.D.N.Y. 2016).....................................................................................15

*California v. Am. Stores Co.*,
   495 U.S. 271 (1990)................................................................................................................13

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)..................................................................................................................16

*City of New York v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011).........................................................................................19, 20, 22

*Company of Stationers*,
   22 Eng. Rep. 862 (1862)..........................................................................................................21

*Devose v. Herrington*,
   42 F.3d 470 (8th Cir. 1994) .....................................................................................................20

*Estate of Ellington ex rel. Ellington v. Harbrew Imports Ltd.*,
   812 F. Supp. 2d 186 (E.D.N.Y. 2011) .......................................................................................8

*Ford Motor Co. v. United States*,
   405 U.S. 562 (1972)......................................................................................................12, 13, 21

*Frost v. Islamic Republic of Iran*,
    419 F. Supp. 3d 112 (D.D.C. 2020)..................................................................................6

*Fuji Photo Film Co. v. Benun*,
    463 F.3d 1252 (Fed. Cir. 2006)........................................................................................8

*Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*,
    527 U.S. 308 (1999).......................................................................................................11

*Hawkins v. i-TV Digitalis Tavkozlesi zrt.*,
    935 F.3d 211 (4th Cir. 2019) ...........................................................................................3

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
    589 U.S. 178 (2020).......................................................................................................11

*La. Public Serv. Comm'n v. FCC*,
    476 U.S. 355 (1986).......................................................................................................11

*League of United Latin Am. Citizens v. Executive Office of President*,
    808 F. Supp. 3d 29 (D.D.C. 2025)..................................................................................20

*LG Elecs., Inc. v. Advance Creative Comput. Corp.*,
    212 F. Supp. 2d 1171 (N.D. Cal. 2002) ...........................................................................5

*Motorola Credit Corp. v. Uzan*,
    No. 02-cv-666, 2003 WL 21373463 (S.D.N.Y. June 12, 2003) .....................................17

*Murthy v. Missouri*,
    603 U.S. 43 (2024).........................................................................................................16

*Nagrampa v. MailCoups, Inc.*,
    469 F.3d 1257 (9th Cir. 2006) .......................................................................................5, 6

*Nat'l Res. Def. Council, Inc. v. Ross*,
    456 F. Supp. 3d 1292 (Ct. Int'l Trade 2020) ..................................................................14

*Native Fed'n of Madre De Dios River & Tributaries v. Bozovich Timber Prods., Inc.*,
    491 F. Supp. 2d 1174 (Ct. Int'l Trade 2007) ..................................................................14

*NML Cap. Ltd. v. Republic of Argentina*,
    699 F.3d 246 (2d Cir. 2012)...........................................................................................17

*Nucor Corp. v. United States*,
    29 CIT 1452, 412 F. Supp. 2d 1341 (2005)....................................................................15

*Omega World Travel, Inc. v. Trans World Airlines*,
    111 F.3d 14 (4th Cir. 1997) ...........................................................................................20

*Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*,
   484 U.S. 97 (1987), *superseded by statute on other grounds* ....................................................3

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
   810 F.3d 631 (9th Cir. 2015) ...............................................................................19, 20, 21

*S.E.C. v. Gastauer*,
   93 F.4th 1 (1st Cir. 2024) .........................................................................................3

*Silge v. Merz*,
   510 F.3d 157 (2d Cir. 2007) .................................................................................4, 5, 6

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) ..........................................................................................11, 12

*Under the Weather, LLC v. United States*,
   775 F. Supp. 3d 1373 (Ct. Int'l Trade 2025) ...................................................................4

*United States v. Country Flavor Corp.*,
   36 CIT 378, 825 F. Supp. 2d 1296 (2012) ...................................................................4, 6

*United States v. Gold Mountain Coffee, Ltd.*,
   8 CIT 247, 597 F. Supp. 510 (1984) ...........................................................................7

*United States v. Oakland Cannabis Buyers' Co-op.*,
   532 U.S. 483, 497 (2001) .......................................................................................12

*V.O.S. Selections, Inc. v. Trump*,
   149 F.4th 1312 (Fed. Cir. 2025) ...............................................................................15

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ..............................................................................................6

**Statutes**

15 U.S.C. § 4 ..............................................................................................................13

15 U.S.C. § 25 ............................................................................................................13

15 U.S.C. § 26 ............................................................................................................13

15 U.S.C. § 1116 .....................................................................................................8, 12

16 U.S.C. § 1371(a)(2) .................................................................................................14

19 U.S.C. § 1337 ..........................................................................................................8

19 U.S.C. § 1484 ........................................................................................................10

19 U.S.C. § 1509 ............................................................................................................8

19 U.S.C. § 1510 .........................................................................................................8, 9

19 U.S.C. § 1526 .........................................................................................................8, 12

19 U.S.C. § 1592 ............................................................................................................7

28 U.S.C. § 1581(i)(1)(C) ..............................................................................................14

28 U.S.C. § 1582(3) ....................................................................................................8, 17

28 U.S.C. § 1585 ...........................................................................................................13

28 U.S.C. § 2643(c)(1) ..................................................................................................13

35 U.S.C. § 283 ..........................................................................................................8, 12

**Other Authorities**

19 C.F.R. § 113.2 ...........................................................................................................10

*Lightweight Thermal Paper From China And Germany; Determination*, 80 Fed.
    Reg. 3252, 3252 (Jan. 22, 2015) ..............................................................................16

*Lightweight Thermal Paper From the People's Republic of China and Germany:*
    *Continuation of the Antidumping and Countervailing Duty Orders on the*
    *People's Republic of China, Revocation of the Antidumping Duty Order on*
    *Germany*, 80 Fed. Reg. 5083 (Jan. 20, 2015) ...........................................................16

The Customs Modernization Act of 2023, S. 3431, 118th Cong. (2023) .....................10

*Thermal Paper From Germany, Japan, the Republic of Korea, and Spain:*
    *Antidumping Duty Orders*, 86 Fed. Reg. 66,284 (Nov. 22, 2021)..........................16

USCIT Rule 7(c) ...........................................................................................................22

USCIT Rule 54(c) ............................................................................................... *passim*

## I.    INTRODUCTION

Koehler Oberkirch GmbH ("Koehler Oberkirch") and Koehler Paper SE ("Koehler Paper") (collectively, "Defendants"), by and through undersigned counsel, submit this response in opposition to the Government's Motion for Default Judgment (the "Motion"). As explained in more detail below, the relief the Government seeks in the Motion is inappropriate and unauthorized.

Defendants do not contest that they have not participated in discovery in this litigation to date. However, the Government requests injunctive relief not included in its pleadings, including "barring the entry of any" products produced or sold by Defendants, including imports by third parties. "[D]efault judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." USCIT Rule 54(c). Because the Government did not seek this relief in its Amended Complaint, the Court should deny the Government's request. Moreover, the Court lacks authority to issue the requested injunctive relief. The Government fails to cite a single statute or case authorizing injunctive relief prohibiting the importation of a foreign company's products as a penalty for failing to pay antidumping duties.

For these reasons, as explained in more detail below, the Court should deny the Government's Motion with respect to the requested injunctive relief.

## II.    BACKGROUND

The Court is well-versed in the background of this matter, thus, for brevity's sake, Defendants will summarize the events following the Court's order denying Defendants' motion to dismiss on March 27, 2025. ECF No. 56. Defendants filed their answer on April 10, 2025, ECF Nos. 57 & 58, and the Parties exchanged initial disclosures on June 30, 2025.

Thereafter, the Government served Defendants with interrogatories, requests for production of documents, and requests for admission on July 7, 2025, with Defendants' responses

1

due in thirty days. On August 6, 2025, Defendants accordingly sent the Government a letter outlining Defendants' position with respect to discovery in this matter. Defendants explained the difficulty in participating in U.S.-style discovery in U.S.-based litigation as German entities. Defendants informed the Government that they would not participate in discovery in this case. In the interest of cooperation and efficiency, Defendants suggested that the Government should move for judgment on the pleadings.

Nonetheless, the Government continued to pursue discovery and served Defendants with additional requests for admission on August 15, 2025, with Defendants' responses due thirty days thereafter. Defendants sent the Government another letter on September 15, 2025, outlining again why Defendants would not participate in discovery. Defendants also explained why discovery would be unnecessary in this matter because the record was sufficiently developed such that the Government could move for judgment on the pleadings. Instead, the Government has now filed the instant Motion for Default Judgment.

III.    ARGUMENT

A.    There Remains No Personal Jurisdiction over Defendants.

For the reasons stated in opposing the Government's Motion for Alternative Service, ECF Nos. 11, 12, 23, 25, and Defendants' Motion to Dismiss, ECF Nos. 43, 47, Defendants maintain and preserve the arguments that there is no personal jurisdiction over Defendants.[1]

Defendants maintain that service of process upon Defendants' U.S. counsel—Holland & Knight LLP—as an alternative means of service was improper and insufficient. Because there has been insufficient service of process, the Court cannot exercise personal jurisdiction over

---

[1] Defendants appear solely to preserve their objection to this Court's jurisdiction and to oppose the extraordinary injunctive relief requested. Defendants' opposition to the injunction is made exclusively in the alternative, and nothing herein should be construed as a waiver of, or inconsistent with, Defendants' jurisdictional objections.

Defendants. *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied. . . . [T]here must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons."), *superseded by statute on other grounds*.[2]

Defendants also maintain that there is no personal jurisdiction over Koehler Paper SE because Koehler Paper SE lacks minimum jurisdictional contacts with this forum, and there is no basis for imputing Koehler Oberkirch's contacts to Koehler Paper SE. *See Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 230–32 (4th Cir. 2019) (finding insufficient minimum contacts and noting "serious comity concerns that would arise if we permitted the exercise of personal jurisdiction over foreign nonparties based on purely foreign conduct"); *S.E.C. v. Gastauer*, 93 F.4th 1, 13 (1st Cir. 2024) (cautioning against exercise of personal jurisdiction over "a foreign resident who lacks any relevant contacts with the entire United States" because such an "'uninhibited approach to personal jurisdiction' . . . would pose 'risks to international comity'" (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 141 (2014)).

### B.    The Government Is Precluded from Seeking Injunctive Relief Through Default Judgment Because It Did Not Seek Such Relief in Its Complaint.

In addition to a money judgment, the Government also seeks extraordinary, unprecedented injunctive relief barring Defendants and any third party from "importing or causing to be imported into the United States . . . any merchandise produced or sold" by Defendants until the money judgment is paid. ECF No. 63 at Prop. Order. This request is a marked departure from the Amended

---

[2] The Federal Circuit's order dismissing Defendants' petition for writ of mandamus was not a ruling on the merits of these arguments, and the Court is thus not bound by any determination thereto. ECF No. 50 (stating "[t]his order is nonprecedential").

Complaint, where the Government sought money judgment—the allegedly unpaid antidumping duties—as its sole remedy. *See* ECF No. 4. Because this injunctive relief was entirely absent from the pleadings, the Government is precluded from now seeking an injunction through default judgment.

"A default judgment *must not differ in kind from*, or exceed in amount, what is demanded in the pleadings." USCIT R. 54(c) (emphasis added); *United States v. Country Flavor Corp.*, 36 CIT 378, 825 F. Supp. 2d 1296, 1309 n.11 (2012) (explaining that "Rule 54(c) establishes a ceiling" on the relief that may be awarded in a default judgment as dictated by the complaint (quoting 10 *Moore's Federal Practice* § 55.34)). Indeed, a "default judgment in violation of Rule 54(c) is void, must be reversed on appeal, and is subject to collateral attack." *Country Flavor*, 825 F. Supp. 2d at 1309 n.11 (quoting 10 *Moore's Federal Practice* § 55.34). This Court has explained that "[t]he underlying purpose of Rule 54(c) is 'to ensure that a party, before deciding not to defend the action, has notice as to the potential extent of the judgment.'" *Id.* (quoting 10 *Moore's Federal Practice* § 55.34); *Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) (explaining that Rule 54(c) calls for "meaningful notice," "which anticipates that defendants will look to the demand clause to understand their exposure in the event of default").[3]

Rule 54(c) precludes plaintiffs from seeking injunctive relief through default judgment when the complaint only seeks damages, as the two remedies "differ in kind." USCIT R. 54(c); *see Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. KEC Installations Inc.*, No. 1:14-cv-

---

[3] Because the CIT Rules "are substantially the same as the Federal Rules of Civil Procedure (FRCP), this Court has found it appropriate to consider decisions and commentary on the FRCP for guidance in interpreting its own rules." *Under the Weather, LLC v. United States*, 775 F. Supp. 3d 1373, 1377 n.3 (Ct. Int'l Trade 2025) (quoting *United States v. Ziegler Bolt & Parts Co.*, 19 CIT 507, 883 F. Supp. 740, 747 (1995)). The language of USCIT R. 54(c) is identical to that of FRCP 54(c).

1126, 2015 WL 3444834, at *2 n.2 (E.D. Va. May 28, 2015) ("Plaintiffs request injunctive relief in their amended motion for default judgment but not in their complaint therefore the request is not properly before the court."); *Brice v. Mezzano Condo. Ass'n*, No. 14-CV-81008, 2015 WL 10857399, at *3 (S.D. Fla. Apr. 10, 2015) ("[T]he explicit request for injunctive relief came in the motion for final default judgment, not in the complaint. Whereas the complaint itself did not request injunctive relief, the final default judgment is void under Rule 60(b)(4)."); *see also LG Elecs., Inc. v. Advance Creative Comput. Corp.*, 212 F. Supp. 2d 1171, 1175–76 (N.D. Cal. 2002) (rejecting request for declaratory judgment in default judgment motion because complaint did not seek declaration).

Here, the injunctive relief the Government now seeks on default judgment is entirely absent from the pleadings and is therefore not attainable. In the Amended Complaint, the Government requested:

> that this Court grant judgment in its favor and against defendants in the amount of $193,631,642.08, plus pre-judgment interest, including but not limited to interest pursuant to 19 U.S.C. § 1505(d), and post-judgment interest; and grant the United States such other and further relief as may be just and appropriate.

ECF No. 4 at 10. Accordingly, the *only* relief the Government could possibly obtain on default judgment is monetary judgment of $193,631,642.08 plus interest. USCIT R. 54(c). Any relief beyond this monetary amount would be void. *Brice*, 2015 WL 10857399, at *3

To the extent the Government argues that "such other and further relief as may be just and appropriate" encompasses a request for injunctive relief, ECF No. 4 at 10, this argument must fail. Courts have widely held that "this formulaic language cannot substitute for the meaningful notice called for by Rule 54(c), which anticipates that defendants will look to the demand clause to understand their exposure in the event of default." *Silge*, 510 F.3d at 160; *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1277 n.6 (9th Cir. 2006) (finding request for "'such other and further relief as

5

the court may deem proper' is mere boilerplate, meant to cover all bases as to the claims asserted in the complaint"). For instance, in *Frost v. Islamic Republic of Iran*, 419 F. Supp. 3d 112 (D.D.C. 2020), the plaintiffs sought economic damages after Iran defaulted. *Id.* at 115–16. The complaint requested certain types of relief along with a request for "such other and further relief," but did not specifically request economic damages. *Id.* The court stated that "general language seeking 'other' relief does not suffice to permit the award of types of damages not otherwise requested in the complaint in the context of a default judgment," and thus held that "under Rule 54(c) it may not award economic damages." *Id.* at 116; *see also Silge*, 510 F.3d at 160 (rejecting argument that demand for pre-judgment interest was implied by "generic request for 'such other and further relief,'" and refusing to award such interest on default because it was not specifically requested in the complaint).

Likewise, here, the Government's boilerplate request for "such other and further relief" is not a legitimate, specific request for injunctive relief—and certainly not the sweeping injunction the Government seeks. *Cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes."). Indulging this catchall request would upend Rule 54(c)'s "underlying purpose" to ensure "notice as to the potential extent of the judgment." *Country Flavor*, 825 F. Supp. 2d at 1309 n.11 (quoting 10 *Moore's Federal Practice* § 55.34). Because the Government did not request any injunctive relief in the pleadings, it cannot obtain this relief through default judgment under Rule 54(c), and this Court should therefore deny the Government's requested injunction.

C.     **This Court Lacks Authority to Issue the Government's Requested Injunction.**

Even if the Government *could* seek injunctive relief through default judgment, the Court should still deny the Government's requested injunction because it lacks authority to grant such sweeping relief. The Government broadly claims that the Court has both statutory and equitable

6

authority to enter its requested injunctive relief. Yet the Government does not—and cannot—present any authority permitting this Court to enjoin a foreign company's products from entering the United States as a penalty for failing to pay antidumping duties. Undersigned counsel was unable to find even a single instance of a federal court ordering such an injunction—barring importation of products because of a company's failure to pay antidumping duties, or even any kind of tax. Presumably, if such a case existed, the Government would have cited it, and if such power existed, Congress would have included it in statutory language.

      1.      *The Requested Injunction Is Not Authorized by Statute.*

The Government first argues that the Court has statutory authority to issue this injunction, yet the Government does not, and cannot, cite a single statute supporting this claim and admits that Congress has not provided this remedy by statute. ECF No. 63 at 17. Instead, the Government argues that the Court "has *implied* authority under the trade laws" to impose the injunction. *Id.* (emphasis added). The Government cites dicta from *United States v. Gold Mountain Coffee, Ltd.*, 8 CIT 247, 597 F. Supp. 510 (1984), to argue that Congress "must have intended" that this relief be available. ECF No. 63 at 18 (quoting *Gold Mountain Coffee*, 597 F. Supp. at 515 n.9). That case addressed when and whether forfeiture would be an appropriate penalty for smuggling restricted goods into the United States under 19 U.S.C. § 1592. *Gold Mountain Coffee*, 597 F. Supp. at 514–15. In finding that *in rem* forfeiture would not be appropriate because *in personam* remedies existed, the Court suggested that "[t]he restricted goods might be excluded from and the owner ordered to remove them from the territory of the United States." *Id.* at 515. The Court expressly declined to decide whether such a remedy would be appropriate. *Id.* at 515 n.9.

This passing suggestion is no substitute for statutory text, nor does it endorse the injunctive relief the Government seeks here. Restricting the future importation of goods that are themselves illegal is fundamentally distinct from the circumstances of this case—an action to recover customs

duties under 28 U.S.C. § 1582(3) for goods that were imported into the United States over a decade ago. Courts may enjoin the importation of illegal or infringing goods, particularly in the intellectual property context. *See Ahava (USA), Inc. v. J.W.G., Ltd.*, 250 F. Supp. 2d 366, 370 (S.D.N.Y. 2003) ("Section 526(a) of the Tariff Act prohibits the importation of merchandise bearing a registered trademark owned by a U.S. trademark holder unless the U.S. trademark holder has consented in writing." (citing 19 U.S.C. § 1526)); *Fuji Photo Film Co. v. Benun*, 463 F.3d 1252, 1254 (Fed. Cir. 2006) (citing 35 U.S.C. § 283 as supplying authority to enjoin the importation of patent infringing goods); *Estate of Ellington ex rel. Ellington v. Harbrew Imports Ltd.*, 812 F. Supp. 2d 186, 196–97 (E.D.N.Y. 2011) (enjoining importer from importing trademark infringing goods under 15 U.S.C. § 1116 of Lanham Act). The International Trade Commission also has authority to enter exclusion orders under 19 U.S.C. § 1337 barring certain goods from entry. *Fuji Photo Film Co.*, 463 F.3d at 1254–55 (describing § 1337 exclusion orders). But these cases are very different from the case at hand, as here the Government seeks an injunction as a remedy for economic loss (i.e., Defendants' failure to pay antidumping duties), not to prevent the importation of illegal goods. And significantly, in all of these situations, statutes specifically authorize such relief, unlike here.

The Government also points to 19 U.S.C. §§ 1509 and 1510 as an example of the Court's authority to exclude goods, but this argument is likewise unavailing. ECF No. 63 at 17–18. The Government argues that § 1509 authorizes U.S. Customs and Border Protection ("Customs" or "CBP") to issue summonses to determine antidumping duty liability, and § 1510 authorizes federal district courts to enforce contempt sanctions for failing to obey such summonses. Because prohibiting the importation of "merchandise into the customs territory of the United States" is a listed sanction, 19 U.S.C. § 1510(b)(1)(A), the Government concludes that the Court can exclude Defendants' goods here.

8

However, the Government ignores the plain text of § 1510. Section 1510 does not broadly grant courts "authority to enforce contempt sanctions," as the Government claims. ECF No. 63 at 17–18. Instead, § 1510(a) grants federal courts "jurisdiction to issue an order requiring such person to comply with the summons," and provides that "[f]ailure to obey such order of the court may be punished by such court as a contempt thereof and such court *may assess a monetary penalty*." 19 U.S.C. § 1510(a) (emphasis added). Thus, § 1510(a) simply authorizes courts to assess monetary penalties for failing to obey summonses. Section 1510(b), on the other hand, addresses sanctions that the *Secretary of the Treasury* (now the Secretary of Homeland Security) and *customs officers* may impose for "refusing to obey a lawful summons . . . and for refusing to obey the order of the court":

> (1) For so long as any person, after being adjudged guilty of contempt for neglecting or refusing to obey a lawful summons issued under section 1509 of this title and for refusing to obey the order of the court, remains in contempt, *the Secretary* may—
>
> > (A) prohibit that person from importing merchandise into the customs territory of the United States directly or indirectly or for his account, and
> >
> > (B) instruct the appropriate customs officers to withhold delivery of merchandise imported directly or indirectly by that person or for his account.

19 U.S.C. § 1510(b)(1) (emphasis added). Thus, only the Secretary can impose the § 1510(b)(1)(A) exclusionary sanction. Section 1510(b)(3) further confirms that these sanctions are distinct from judicial contempt, stating "[t]he sanctions which may be imposed under paragraphs (1) and (2) are in addition to any punishment which may be imposed by the court for contempt." 19 U.S.C. § 1510(b)(3). Accordingly, § 1510 does not grant the Court authority to enjoin the importation of merchandise.

Further, the proposed injunction would authorize CBP to "exclude the Enjoined Merchandise from entry into the United States." But CBP does not have such broad authority. CBP's current authority to "sanction" parties with respect to future entries based upon unpaid bills

9

is limited to imposing heightened bonding or other procedural requirements for the specific importer whose activities reflect a higher risk to the revenue of the United States and derives from CBP's authority to require bonds and other security and set entry requirements. *See* CSMS #47894086, *Bonds Securing Customs Activities for Suspended or Debarred Persons* (May 21, 2021), *available at* https://content.govdelivery.com/accounts/USDHSCBP/bulletins/2dace46 (describing CBP's current policy of denying use of continuous entry bonds for importers who have been suspended or debarred[4] by CBP and citing 19 U.S.C. § 1623 and 19 C.F.R. § 113.2, which govern CBP's authority to require bonds or other security, as sources for authority); CBP, *Importer Sanctions*, https://www.cbp.gov/trade/priority-issues/revenue/bill-payments/importer-sanctions (last modified Sept. 26, 2024) ("If an importer is placed on sanction because of a delinquent bill, that importer must file entry summary with payment of estimated duties, taxes, and fees attached before U.S Customs and Border Protection will release future entries."); 19 U.S.C. § 1484 (authorizing CBP to issue regulations regarding entry of merchandise). But what the Government wants the Court to do here is authorize CBP to exclude *other entities* who are not before this Court from importing products produced by a party with unpaid antidumping duties. This CBP cannot do.

If that were not clear enough from the statute itself, recent Congressional activity reinforces the point. A 2023 bill introduced by Senators Cassidy and Whitehouse, the Customs Modernization Act of 2023, S. 3431, 118th Cong. (2023), sought to expand CBP's authority to exclude imports "caused *or facilitated* by a person identified with an active exclusion record." *Id.* (emphasis added).

---

[4] Suspension and debarment are administrative actions taken against specific companies that the federal government deems unreliable, and they ensure that the federal government does not do business with those unreliable parties. *See, e.g.*, CBP, *Suspension and Debarment*, https://www.cbp.gov/trade/programs-administration/suspension-and-debarment (last modified Nov. 20, 2025).

Yet this bill was merely introduced—it did not pass. If CBP already had power to bar third parties

from importing Defendants' merchandise, this provision of the Cassidy Bill would not have been

introduced.  Congress and CBP thus understand that CBP cannot bar third parties from importing

Defendants' merchandise. *See Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 189 (2020)

("When Congress acts to amend a statute, we presume its amendment to have real and substantial

effect." (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258–59 (2004))). The

Government thus asks this Court to authorize CBP to exercise authority that Congress has, to date,

declined to give CBP. But "an agency literally has no power to act . . . unless and until *Congress*

confers power upon it." *See La. Public Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) (emphasis

added). As the Government does not, and cannot, identify any statute authorizing the injunctive

relief it seeks through default judgment, the Court should deny the Government's request.

> 2.    *The Court's Equitable Powers Do Not Encompass this Unprecedented Injunctive Relief.*

The Government next argues that the Court has equitable authority to enter the requested

injunction, reaching back to the seventeenth century for support. However, the Government fails

to present a single case where this Court, or any other court, enjoined the importation of a foreign

company's products as a penalty for failing to pay antidumping duties. The Government, citing

the test from *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999) as

applied in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), first analogizes its sought-after injunction

to seventeenth- and eighteenth-century intellectual property cases where infringing imports were

enjoined from entry. ECF No. 63 at 18–20. In *CASA* and *Grupo Mexicano*, the Supreme Court

explained that courts' equitable authority "encompasses only those sorts of equitable remedies

'traditionally accorded by courts of equity' at our country's inception." *CASA*, 606 U.S. at 841

(quoting *Grupo Mexicano*, 527 U.S. at 319). And in *CASA*, the Supreme Court held that universal

injunctive relief did *not* exist at the time of the founding, as equitable relief ordered by the High Court of Chancery in England was "typically party specific," and American courts "consistently rebuffed requests for relief that extended beyond the parties." *Id.* at 842–43.

The Government argues that the intellectual property cases at the time of the founding support the sweeping injunctive relief requested here. Those courts prohibited the entry of merchandise, but the Government ignores that the equitable authority wielded in those cases is now, as noted above, specifically authorized by federal law. *See, e.g.*, 15 U.S.C. § 1116; 19 U.S.C. § 1526; 35 U.S.C. § 283. Congress thus acknowledged the historical practice of enjoining conduct that infringes intellectual property rights and accordingly limited injunctive relief to those scenarios. *See United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001) ("[A] court sitting in equity cannot 'ignore the judgment of Congress, deliberately expressed in legislation.'" (quoting *Virginian R. Co. v. Railway Emps.*, 300 U.S. 515, 551 (1937))). Here, there is no statute authorizing injunctive relief to prohibit imports when a party fails to pay antidumping duties, nor has such relief ever been issued by a federal court. Further, infringing goods may be excluded from the U.S. because the goods themselves violate intellectual property rights, whereas in an antidumping case, the goods are lawful and are permitted entry—the price of the imports simply warrants the assessment of additional duties. And here, the goods at issue were imported over a decade ago. Accordingly, given these differences, the history of injunctions in intellectual property cases has no bearing on the Court's authority to issue such relief.

The Government also likens its requested relief to divestiture orders in antitrust cases, citing *Ford Motor Co. v. United States*, 405 U.S. 562 (1972), yet the Government overlooks not only that divestiture is completely different from the injunction sought in this case, but also that divestiture is specifically authorized by antitrust statutes. First, divestiture orders directly remedy

12

the harm in antitrust cases (i.e., preventing anticompetitive acts or harm). Unlike such orders, here the injunction requested does not, contrary to the Government's argument, do anything to "restore[]" "competitive conditions" in the U.S. markets. ECF No. 63 at 20, 22. The Government's injunction seeks to prevent importation of all of Defendants' merchandise into the U.S.—not just the lightweight thermal paper subject to the antidumping duties (an inappropriate request, as discussed further below). Further, the requested injunction does nothing to make the allegedly harmed market whole, because here the alleged harm was from Defendants' importations of lightweight thermal paper more than a decade ago. This case has nothing to do with current, or even recent, imports.

Second, antitrust laws expressly authorize divestiture as a remedy. Section 4 of the Sherman Act, 15 U.S.C. § 4, authorizes courts to "enjoin[] or otherwise prohibit[]" conduct that violates Sections 1 through 7 of the Sherman Act, *id.*, and courts have long held that this relief encompasses "[c]omplete divestiture," *Ford Motor Co.*, 405 U.S. at 573, 573 n.8. Similarly, Sections 15 and 16 of the Clayton Act, 15 U.S.C. §§ 25, 26, authorize courts to "enjoin[] or otherwise prohibit[]" violations of the Act, *id.* § 25, and enter "injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws," *id.* § 26; *see also California v. Am. Stores Co.*, 495 U.S. 271, 280–82 (1990) (holding that both Sections 15 and 16 "authorize divestiture"). Again, this is materially different from the relief the Government seeks, as there is no statute authorizing injunctive relief excluding imports as a penalty for failing to pay antidumping duties.

Defendants do not dispute that the Court has authority to grant injunctive relief generally. This power, of course, is expressly granted by statute. *See* 28 U.S.C. §§ 1585, 2643(c)(1). But the sweeping injunctive relief the Government seeks is unprecedented, overbroad, and unauthorized

13

without specific statutory license. Again, no federal court has ever issued the relief the Government seeks here. Beyond the intellectual property context, the only other situation where this Court has even entertained an injunction barring the importation of goods is in the context of citizen suits against the United States under 28 U.S.C. § 1581(i)(1)(C). *See, e.g.*, *Nat'l Res. Def. Council, Inc. v. Ross*, 456 F. Supp. 3d 1292, 1293–94 (Ct. Int'l Trade 2020); *Native Fed'n of Madre De Dios River & Tributaries v. Bozovich Timber Prods., Inc.*, 491 F. Supp. 2d 1174, 1185–86 (Ct. Int'l Trade 2007). That Section grants the Court exclusive jurisdiction over actions against the United States arising "out of any law of the United States providing for—(C) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health and safety." 28 U.S.C. § 1581(i)(1)(C). Thus, that Section only applies when the United States is a defendant, and the claim is based on a federal statute specifically authorizing embargoes or import restrictions. *See Ross*, 456 F. Supp. 3d at 1293–94 (noting prior injunction requiring Government to ban certain fish importation pursuant to Marine Mammal Protection Act provision, 16 U.S.C. § 1371(a)(2), allowing the Treasury Secretary to ban certain commercial fish products); *Bozovich Timber Prods.*, 491 F. Supp. 2d at 1185–86 (declining to enjoin importation of bigleaf mahogany into United States because ESA and CITES did not "provide for an embargo"). And as with the intellectual property cases, Section 1581 involves goods that are illegal to import. Because the Government is the Plaintiff in this case, and its claims are not based on an embargo statute, Section 1581(i)(1)(C) does not apply.

**D.    The Government Cannot Satisfy the Factors Necessary for a Permanent Injunction.**

As explained above, the Government's belated request for injunctive relief is procedurally barred by Rule 54(c), and the Court lacks authority to grant such relief. But even if the Government had requested injunctive relief in its Complaint, and even if this Court had authority to grant an

injunction, an injunction would still be improper under the test for injunctive relief. Under "well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1339 (Fed. Cir. 2025) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). The four factors are: "(1) that [plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* (quoting *eBay*, 547 U.S. at 391). The Government cannot satisfy these factors.

### 1.    *Irreparable Harm.*

Tellingly, the Government's brief does not even lead the discussion of the four-factor test with irreparable harm. That is because there is none. It is well established that irreparable harm is the most important of the four factors for an injunction, with many cases describing it as a threshold requirement. *See C.D.S., Inc. v. Zetler*, 217 F. Supp. 3d 713, 716 (S.D.N.Y. 2016) (recognizing "irreparable harm is the single most important prerequisite" for injunctive relief (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009))). Indeed, irreparable harm has been described as the "*sine qua non*" of injunctive relief. *Nucor Corp. v. United States*, 29 CIT 1452, 412 F. Supp. 2d 1341, 1348 (2005). But it is hornbook law that money damages are not irreparable harm. *Beck v. Test Masters Educ. Servs.*, 937 F. Supp. 2d 85, 88 (D.D.C. 2013) ("[A]t issue here is a recoverable payment of money, a hornbook example of a payment that does not constitute irreparable harm . . . ."). And here the Government seeks an injunction based solely on its expectation that Defendants will fail to pay any duties that this Court orders.

The Government attempts to argue that "[t]he inability of the Government to recover money from a party is an irreparable harm." ECF 63 at 23. But money damages are the antithesis

of irreparable harm. *See A.X.M.S. Corp. v. Friedman*, 948 F. Supp. 2d 319, 331–32 (S.D.N.Y. 2013) ("[I]f the harm can be remedied in money damages, that is the antithesis of irreparable harm."). There is nothing about an injunction barring entry of Defendants' goods that would remedy the loss asserted—the failure of the Defendants to pay the antidumping duties. When a plaintiff seeks injunctive relief, "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). Injunctive relief is "forward-looking relief," so "the past is relevant only insofar as it is a launching pad for a showing of imminent future injury." *Murthy v. Missouri*, 603 U.S. 43, 59 (2024); *see also Apple Inc. v. Samsung Elecs. Co., Ltd.*, 809 F.3d 633, 652 (Fed. Cir. 2015) (Reyna, J., concurring).

The Government does not purport to seek an injunction to remedy alleged harm to the market. Nor could it, as the conduct at issue ended more than a decade ago.[5] The fact that the injunction is not intended to prevent future harm to the lightweight thermal paper market is evident from the fact that the Government seeks an injunction that would bar importation of *all* of

---

[5] The antidumping duty order pursuant to which the unpaid duties were imposed was revoked in January 2015. *Lightweight Thermal Paper From the People's Republic of China and Germany: Continuation of the Antidumping and Countervailing Duty Orders on the People's Republic of China, Revocation of the Antidumping Duty Order on Germany*, 80 Fed. Reg. 5083 (Jan. 20, 2015). That order was revoked after the U.S. International Trade Commission determined that revoking the order with respect to Germany "would not be likely to lead to continuation or recurrence of material injury to an industry in the United States within a reasonably foreseeable time." *Lightweight Thermal Paper From China And Germany; Determination*, 80 Fed. Reg. 3252, 3252 (Jan. 22, 2015). The U.S. International Trade Commission reached that conclusion despite the Commerce Department having imposed significant antidumping duties on Papierfabrik August Koehler AG under that order, which (as demonstrated by this action) had not been paid at the time of the Commission's decision to revoke the order. Commerce imposed an entirely new antidumping order in 2021 that covers lightweight thermal paper (and other thermal paper products) that protects against unfair pricing, *Thermal Paper From Germany, Japan, the Republic of Korea, and Spain: Antidumping Duty Orders*, 86 Fed. Reg. 66,284 (Nov. 22, 2021), and Defendants' products have been imported and reviewed under that order.

Defendants' products, not just lightweight thermal paper, and that the injunction would last only until Defendants pay the duties. Indeed, the Government thus expressly refers to its requested injunction as "[c]oercive relief." ECF No. 63 at 5. The Government cites no authority for the proposition that injunctive relief can be used to coerce a defendant to pay money damages.

> 2.    *Remedies Available at Law.*

The Government argues that it lacks an adequate legal remedy because it posits that Defendants are unlikely to pay any award granted in this case. But Congress has determined what constitutes an adequate remedy for a violation of the antidumping laws in 28 U.S.C. § 1582(3), where it provided for duties but did *not* provide injunctive relief. And, as explained above, an injunction would not remedy any failure to pay by the Defendants.

The Government's cases are not to the contrary. The cases cited by the Government regarding the adequacy of remedies at law did not involve courts imposing injunctive relief to coerce a defendant into paying a monetary award. Rather, those cases involved injunctions preventing the defendants from transferring assets to third parties, as doing so would thwart the plaintiffs' collection efforts. *See NML Cap. Ltd. v. Republic of Argentina*, 699 F.3d 246, 254 (2d Cir. 2012) (upholding an injunction ordering specific performance of an equal treatment provision of a bond); *Motorola Credit Corp. v. Uzan*, No. 02-cv-666, 2003 WL 21373463, at *3 (S.D.N.Y. June 12, 2003) (permitting defendant to proceed with the sale of an aircraft in which defendants claimed beneficial ownership, but requiring that the proceeds of such sale be deposited in the court's registry pending the court's decision on plaintiff's motion for preliminary injunction). Unlike those cases, Defendants' products are not collateral or assets that could be used to satisfy monetary judgment *See Motorola*, 2003 WL 21373463, at *1–2 (acknowledging "prior restraints on the defendants' assets located in the United Stated," and finding "any disposition of the aircraft would therefore interfere with plaintiffs' recovery in the underlying lawsuit"). The injunction

sought in the case at hand would not prevent the transfer of assets to third parties or otherwise preserve assets for potential collection by the Government. Defendants' sales into the United States would not prevent Defendants from paying any monetary award. To the contrary, such sales could only *increase* Defendants' ability to pay.

Were the Court to grant an injunction based upon the Government's expectation that Defendants will not pay any monetary award, it would dramatically expand the power of the courts. The Government cites no authority for the proposition that courts may invent some form of "coercive" injunctive relief as a means of incentivizing payment of money damages by a defendant.

### 3.    *Balance of Hardships.*

It can hardly be disputed that the hardships to Defendants from an injunction would greatly outweigh any hardship to the Government from denial of an injunction. The Government's requested injunction would extend far beyond the conduct at issue in the antidumping duty order by prohibiting Defendants and *any* third party from importing *any* product by Defendants into the United States. If issued, the injunction would impose a crushing burden on Defendants by preventing them from conducting any business in the United States. Any benefit to the Government from excluding Defendants from the market has not been articulated.

### 4.    *The Public Interest.*

The Government's requested relief would disserve the public interest. Though the Government claims that its requested injunction would promote the rule of law by deterring the evasion of antidumping duties, this type of remedy would in fact undermine the rule of law by creating new punishment authority outside of laws enacted by Congress, indeed punishment authority that Congress has *declined* to grant. *See supra* Section C.1 (discussing Cassidy bill). In addition, the extension of an injunction to any third party serves as a deterrent to those seeking to

18

serve as importers, given the uncertainty and burden required to identify whether any imported products may or may not be the subject of a court order in a case in which the importers were not parties.

### E.    There Is No Basis for Applying an Injunction to Third Parties or Enjoining Goods Other than Lightweight Thermal Paper.

The Government's request for injunctive relief is also far too broad in scope and does not comply with equitable principles. It is "'the essence of equity jurisdiction' that a court is only empowered 'to grant relief no broader than necessary to cure the effects of the harm caused by the violation.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) (quoting *Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402, 406 (2d Cir. 1997)). Thus, "injunctive relief should be narrowly tailored to fit specific legal violations," and "the court must mould each decree to the necessities of the particular case." *Id.* (first quoting *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 50 (2d Cir. 1996); and then quoting *Forschner*, 124 F.3d at 406). Stated differently, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). As such, "[a]n injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation." *Mickalis*, 645 F.3d at 145.

This case arises out of the importation of Defendants' lightweight thermal paper—and no other product—between 2009 and 2011. ECF No. 4 ¶¶ 1, 9–10, 13–14. Thus, the only alleged harm in this case relates to the importation of Defendants' lightweight thermal paper and the associated unpaid antidumping duties. The Government's requested injunction, however, encompasses far more than this merchandise, and would bar the importation of *all* of Defendants' products, whether imported by Defendants or a third party. The antidumping duty order underlying this case was

19

revoked more than a decade ago. There are no claims or allegations in the Amended Complaint related to Defendants' other products or third parties, thus the Government has not alleged any harm arising out of the importation of Defendants' other products or third-party conduct. Because the Government's requested relief would broadly enjoin conduct that has not caused any harm, such relief defies the "essence of equity jurisdiction" and exceeds the Court's authority. *Mickalis*, 645 F.3d at 144–45; *Pac. Radiation*, 810 F.3d at 636 (explaining court "lacks authority to grant" injunctive relief that goes beyond "the claims set forth in the underlying complaint itself"). The Government's requested relief extends far beyond the scope of the alleged harm caused by the importation of lightweight thermal paper and is therefore overbroad, overly punitive, and unwarranted. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (denying motion for injunctive relief "based on new assertions of mistreatment that are entirely different from the claim raised and the relief requested in his inadequate medical treatment lawsuit"); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 15–16 (4th Cir. 1997) (holding injunctive relief "should not issue" when "the injury that the movant seeks to prevent" through injunctive relief is distinct from "the injury for which it seeks redress in the underlying complaint").

To the extent the Court finds it has authority to grant part of the Government's injunction, the Court should limit such relief to an injunction barring Defendants *only* from importing lightweight thermal paper *only*. *League of United Latin Am. Citizens v. Executive Office of President*, 808 F. Supp. 3d 29, 84 (D.D.C. 2025) ("[A]ny equitable remedy . . . must be both 'limited to the inadequacy that produced the injury that the Plaintiffs have established,' and not "'more burdensome to the Defendants than necessary' to provide complete redress to the Plaintiffs." (first quoting *Gill v. Whitford*, 585 U.S. 48, 68 (2018); and then quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979))). Any injunction beyond this scope would betray the

20

"relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint," as the only alleged harm relates to the importation of Defendants' lightweight thermal paper. *Pac. Radiation*, 810 F.3d at 636.

The Government's own authority reinforces this limitation. Although the Government's intellectual property cases are inapposite for the reasons explained above, in those cases, the Government admits that the injunctive relief against infringing goods only "prohibited the entry of *specified* merchandise," i.e. the merchandise that infringed a patent or copyright. ECF No. 63 at 19 (emphasis added). Thus, those injunctions did not prohibit the importation of *all* of the defendants' goods, just the importation of infringing goods. *See, e.g.*, *Company of Stationers*, 22 Eng. Rep. 862 (1862) (prohibiting only the importation of "English Bibles and Statute-Books").

Similarly, the Government compares this case to the divestiture order in *Ford Motor Co.*, ECF No. 63 at 20, but there the anticompetitive activity occurred in the spark plug market, so the Court only enjoined Ford from manufacturing spark plugs for ten years. 405 U.S. at 572. The Government explains that the remedy in *Ford* was appropriate because "it would lower other firms' barriers to entry and give them a chance to compete." ECF No. 63 at 20. The Court did not require divestiture of Ford's other business as a means of punishing Ford or coercing it into ceasing any anticompetitive activity. The only alleged harm in the Amended Complaint occurred in the lightweight thermal paper market ten years ago, thus, Defendants—at most—should only be excluded from *that* market.

The Government also argues that divestiture is analogous to prohibiting entry because "both prohibit a defendant from reaping the benefits of its unfair trade practices *to the detriment of competitors in the same market*." ECF No. 63 at 21–22 (emphasis added). But here the Government seeks an injunction that would apply to *other* markets and benefit competitors in those

totally unrelated markets who could not have been harmed by the alleged dumping activity at issue in this case. *Mickalis*, 645 F.3d at 144 ("[A] court is only empowered to grant relief no broader than necessary to cure the effects of the harm caused by the violation.").

In summary, there is simply no support for the Government's claim that this Court has statutory or equitable authority to enter the requested injunction. The cases and statutes the Government cites are inapposite, and there is no record of this Court or any other federal court ordering injunctive relief of this nature or magnitude.

## IV.    CONCLUSION

For these reasons, the Court should deny the Government's Motion for Default Judgment. Should the Court grant the Motion for Default, it should deny the Government's novel and unsupported request for an injunction barring the importation of any of the Defendants' products by any party.

Defendants request, pursuant to USCIT Rule 7(c), that the Court schedule oral argument regarding the Government's Motion.

Respectfully submitted,

*/s/ John F. Wood*
John F. Wood
Andrew McAllister
Anna P. Hayes
Stuart G. Nash *(admission pending)*
HOLLAND & KNIGHT, LLP
800 17th Street N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 469-5628
Andrew.McAllister@hklaw.com
Anna.Hayes@hklaw.com
John.F.Wood@hklaw.com
Stuart.Nash@hklaw.com

*Counsel for Defendants*

22

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the word limitation set forth in this Court's Rules (Chambers Procedures). According to the word processing system (Microsoft Word) used to prepare this filing, the foregoing contains 7,297 words.

*/s/ John F. Wood*
John F. Wood
HOLLAND & KNIGHT, LLP